JENKINS, ADMINISTRATOR *v.* JENKINS.

4-9603                                    243 S. W. 2d 646

Opinion delivered November 19, 1951.

Phillip H. Loh, for appellant.

Bob Bailey, Jr., and Bob Bailey, for appellee.

GRIFFIN SMITH, Chief Justice.   James Walter Jenkins was accidentally killed January 20, 1950, when struck by an automobile owned and driven by Bowdre Banks. Everett Jenkins and Burl Deavers were appointed administrators of the decedent's estate.  They joined those mentioned as the heirs and widow in a suit against Banks for $46,000, of which $10,000 was for conscious pain and suffering.  The entire demand was settled in a consent judgment for $10,000 in favor of the plaintiffs who were shown to have been two sons, three daughters, two grandsons, one granddaughter, a stepdaughter, and the widow.

A release was executed by the administrators and the widow March 8 following the intestate's death.  A circuit court order of distribution mentions a family settlement under which each adult party would receive $1,043.50. Three of the plaintiffs were minors, but an order of the Scott probate court was recognized showing that Everett Jenkins was curator for these claimants.  The order directed that the minors' portions be paid to the curator.[1]

The action before us does not involve proceeds of the judgment.  Instead, it requires a construction of releases signed by Mrs. Jenkins and the two executors upon which distribution was based.

Jenkins was insured by the state highway department for $3,000 under a group coverage by Union Life Insurance Co.  No beneficiary was named; but, by § 7 of

---

[1] Cost of collection and burial charges with incidental items were listed as $1,652, leaving $8,348 to be distributed among the ten claimants, three of whom, the grandchildren, took a single share.

the master policy, indemnity for loss of life as distinguished from specific benefits collectible by the insured would go to "the beneficiary if surviving the employe, and otherwise to the estate of the employe."

February 22, 1950, Union Life paid Mrs. Jenkins $3,000 believing that she, to the exclusion of the Jenkins heirs and the estate, was entitled to the money. But the insurance company, apprehending a controversy, brought an equitable action July 25th to impound the fund. In response to a writ of garnishment the First State Bank of Morrilton disclosed that its indebtedness to Mrs. Jenkins was $3,051.50. Her right to retain the insurance payment is the issue here.

The family settlement identified in the circuit court judgment was referable to a petition of January 27 listing the decedent's stepdaughter as a participant. Mrs. Jenkins agreed to accept an eighth of the Bowdre judgment and to wave her dower rights "or other claims as widow." The petition contained this sentence: "It is also understood that this agreement does not include a division of whatever payment may be made by the State of Arkansas." The final prayer was that the court accept the agreement . . . "for the division of whatever funds may be received from Bowdre Banks."

In the chancery court trial the circuit court complaint was offered in evidence and admitted without objection, but when the release heretofore referred to as having been executed March 8 was offered there was objection on the ground (a), that it was immaterial; (b), the paper tendered was a carbon copy with names of the administrators and Mrs. Jenkins written with a typewriter. The court rejected the copy under the best evidence rule, but held that if the original should be offered it would probably be competent. The copy was handed to the reporter for the record. Later a photostatic copy was sup-

plied, but whether that occurred during the trial is in doubt.[2]

Title of this document is Release of All Claims, but this paragraph gives concern: "The aforesaid payment of $10,000 does not embrace . . . $3,000 . . . [paid] to Dovie Jenkins by Union Life. . . . However, it is expressly understood . . . by the undersigned . . . that the total gross recovery of the undersigned against all parties herein released for any and all claims and causes of action . . . arising out of . . . the death . . . [of Jenkins] shall be $13,000—being the aforesaid $10,000 plus the aforesaid $3,000—no more and no less."

A contractual provision immediately preceding references to the items aggregating $13,000 is copied in the margin.[3]

As early as 1929—two years after the Martineau Road Law was adopted—the state recognized peculiar

[2] The reporter's note is: . "Later Mr. Bailey supplied me with a photostatic copy. I submit both for inspection." There can be little doubt that the photostats are genuine, but there is doubt that the trial court saw them before rendering the decree. However, the bill of exceptions containing the copies was approved without objection from appellants.

[3] "[The administrators and Mrs. Jenkins] state that J. Walter Jenkins [was killed while in the line of duty as a highway employe] . . . and [we] are aware that Act 462 of 1949 gives . . . the widow a right to make claims against the state . . . for benefits . . . under Workmen's Compensation Law. However, because conditions attached to the settlement-payment of $10,000, aforesaid, [are] that all parties herein released shall be fully protected against and released from any possible subrogation claims by or in behalf of the State, or any agencies or divisions thereof, and because the undersigned . . . hereby acknowledge that after deducting the reasonable costs of collection and the widow's one-third from the aforesaid $10,000, under the provisions of § 40 of the Compensation Law the remaining two-thirds, upon which the State would claim a lien under said § 40, is more than the State would owe the widow in . . . compensation benefits, and therefore the undersigned cannot and shall not expect any . . . [such] benefits from the state, whose liability is hereby extinguished in consideration of the . . . payment of $10,000. . . . All of the undersigned hereby agree that no claim for pecuniary benefits of any kind shall be made against the State . . . or any agency or division thereof, by or in behalf of [us]. Furthermore, . . . should it subsequently be deemed necessary . . . by any of the parties herein released to obtain an adjudication through the . . . Compensation Commission extinguishing any liability of the State, . . . the undersigned agree to cooperate . . . to obtain said adjudication extinguishing any liability of the State . . . or any of its agencies."

hazards in building and maintaining highways. By Act 232 a Highway Employes Protection Fund was established from which death and injury benefits were payable. The legislation proved inadequate. In 1935 a more comprehensive program was adopted under which the Governor, State Comptroller, and Director of Highways were constituted a board to ascertain the best method of providing compensation. Power was conferred to contract with any surety, bonding, or insurance companies authorized to do business in the state whereby liability insurance for highway employes would extend to workers. An appropriation of $18,000 covering 1935 and 1936 was made, with a like amount for the next two years. See Act 115 of 1935. This was the basis for the State's contract with Union Life whereby a master policy paying $3,000 for death if the employe's salary should be $1,800 or over, and $2,000 where salaries were under $1,800, was issued. Irrespective of the number of employes involved in a common accident, the company's liability was $10,000, to be prorated. As to each salary group specific benefits were payable according to tabulated schedules.

The contract is captioned ''Group Accident Policy for Employes [of] Arkansas State Highway Commission.'' It is stipulated that there was no individual application.

The next State undertaking to insure highway employes was Act 462 of 1949. By § 7 the Workmen's Compensation Commission is given exclusive jurisdiction of claims against the State and its several agencies, while other demands go to the Claims Commission created by the 1949 enactment[4]. Section 36 of the Compensation Law extends to a self-insurer (such as the State, in the instant case) the privilege of *securing* a part of the compensation liability under the Act as the self-insurer shall elect, ''. . . by insuring such portions with a company approved by the Commission, and the liability of the company shall be limited to those features and liabilities of the Act as are expressly stated and none other.''

[4] The appropriation to pay claims for state employes is in Act 459 of 1949, being a sum not in excess of $75,000 remaining from the principal appropriation of $1,238,901.13. (See Act 225 of 1951 for the current appropriation).

Should the insurance payment be treated as security of a self-insurer under § 36, then, Mrs. Jenkins alone could prevail if the State through the Compensation Commission were treated as the obligor to which the claimant could turn, there being no dependents. See § 15 (c) (1) (2), Act 319 of 1939 as amended by Act 121 of 1941 and Initiated Act No. 4 of 1948.

It is difficult to say just what the parties had in mind when the contract of March 8th was made. The subrogation features of § 40 of Act 319 of 1939 were considered, but the State was not represented. Section 40 was construed in *Barth* v. *Liberty Mutual Insurance Co.*, 212 Ark. 942, 208 S. W. 2d 455; *Gilbert, Adm'r, v. Missouri Pacific Railroad Co.*, 208 Ark. 1, 185 S. W. 2d 558. See *Anderson* v. *Sanderson & Porter*, 146 Fed. 2d 58. The issue is not before us at this time except to the extent that the releasors were cognizant of the law's existence.

Quite clearly the purpose of the March 8th contract was to acquit "all parties" to the extent of $13,000, but there are no reservations of individual rights respecting the insurance money. This had been received by Mrs. Jenkins and the payment was known to all who were interested. Whether the $3,000 be treated as *pro tanto* self-insurance by the State, payable to Mrs. Jenkins under the Compensation Law, or whether in consideration of the widow's release to the sons, daughters, stepdaughter and grandchildren of sums aggregating more than she was bound by law to surrender—in either event the trial court did not err in holding that the administrators were concluded by the release. It seems obvious that if the intent at that time had been to take from Mrs. Jenkins two-thirds of the $3,000 payment, something of a definite nature would have been included in the writing.

Affirmed.

Mr. Justice GEORGE ROSE SMITH dissents.