GILBERT, ADMINISTRATOR, *v.* MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE.

4-7535                                    185 S. W. 2d 558

Opinion delivered January 8, 1945.

2

*Guy E. Williams,* Attorney General, and *Elmo Taylor,* Assistant Attorney General, for appellant.

*Buzbee, Harrison & Wright* and *Pickens & Pickens,* for appellee.

SMITH, J.  D. W. Gilbert, as administrator of the estate of Walfer Sexton Gilbert, recovered a judgment against the Missouri Pacific Railroad Company, and its trustee, which was affirmed by this court on January 24, 1944, after having been reduced to the sum of $27,000. *Mo. Pac. R. Co., Thompson, Trustee,* v. *Gilbert, Adm.,* 206 Ark. 683, 178 S. W. 2d 73.

The deceased was not an employee of the railroad company at the time he received the injury which resulted in his death.  He was at that time employed by the A. J. Spicer Construction Company, which company carried the insurance required by the workmen's compensation law with the Commercial Standard Insurance Company.

It is stated in the brief filed by the attorney who represented the plaintiff in this damage suit, that there was a gentlemen's agreement between himself and the attorney for the insurance carrier, that the insurance company should not interplead in that case, and that any amount paid by it during the progress of the suit, as compensation carrier for the Spicer company, should be refunded to the company out of the moneys recovered by the administrator, this under the provisions of § 40, Act 319 of the Acts of 1939, the Workmen's Compensation Act.

On March 20, 1944, a bill of interpleader was filed by the railroad company in the chancery court of Independence county, of which county the widow and heirs at law of Walter Gilbert and the administrator of his estate were residents.  The insurance carrier was made a party, as were also the members of the Workmen's Compensation Commission.  The bill of interpleader was accompanied by a tender and payment into the court of the sum

of $29,564.57, the amount then due, with interest, on the judgment which had been recovered against the railroad company. It was alleged that there were adverse claimants to this fund, and it was prayed that an order of distribution be made, which when complied with would exonerate the railroad company from further or additional liability.

The parties all appeared and answered, the minors by their guardian appointed by the probate court of Independence county. But these pleadings raised only one disputed question of fact. The facts as disclosed by these pleadings are to the following effect. The insurance company paid to Gilbert's widow the total sum of $1,766.27, this for hospital and medical bills, burial expenses and weekly compensation benefits of $20 per week. It is asserted, and not disputed, that the maximum liability of the insurance carrier was $7,000, and it was prayed that the carrier be reimbursed for advances already made and that a lien in its favor against the impounded fund paid into the court by the railroad company, be declared to protect it against its contingent liability under the provisions of § 40 of Act 319, Acts 1939.

The members of the Workmen's Compensation Commission filed the following answer:

"The defendants, Dave Peel, S. V. Bracy, and W. J. Smith, chairman and members respectively, Arkansas Workmen's Compensation Commission, for separate answer to the complaint herein say:

"That the Commercial Standard Insurance Company, a corporation, and A. J. Spicer, an individual, are liable for and are paying compensation to Della Gilbert, widow of Walter Sexton Gilbert, deceased, for herself and on account of Della Ellen Gilbert, Lillian Gilbert, Walter Marvin Gilbert, and ............................... Gilbert, minor children of Walter Sexton Gilbert, deceased, under the provisions of the Workmen's Compensation Law, Act 319 of 1939; that pursuant to § 19 (b) of the Workmen's Compensation Law, the said Commercial Standard Insurance Company and A. J. Spicer are required to pay compen-

4

sation in installments, semi-monthly, unless and until otherwise authorized by the Workmen's Compensation Commission; that pursuant to § 19 (j) of the Workmen's Compensation Law, the Workmen's Compensation Commission has sole jurisdiction of the claims for payment of compensation in one lump sum; that the distribution of the proceeds of the recovery had against Guy A. Thompson, trustee, Missouri Pacific Railway Company, N. W. Jackson, and H. K. Wilkerson, by D. W. Gilbert, administrator of the estate of Walter Sexton Gilbert, deceased, must be in accordance with the provisions of § 40 of the Workmen's Compensation Law, and have the approval of the circuit court of Jackson county, Arkansas, or the Workmen's Compensation Commission.

"Wherefore, the defendants pray that the proceedings be dismissed and that they recover their costs herein."

Testimony was heard as to the value of the services of the attorney who filed the bill of interpleader, this being the only controverted question of fact in the case. The decree from which is this appeal recites the facts hereinbefore stated, and allowed attorney's fee of $175 and certain costs. It was found that the insurance carrier had made payments in the sum of $1,766.27 and had a lien on two-thirds of the impounded fund for this amount.

It was further ordered, "that the sum of $5,540 be retained by the clerk of the court until such time as the time for appeal has expired and subject to the orders of this court in the event that the Workmen's Compensation Commission shall take an appeal, and their claim to administer the funds be allowed on appeal; same shall be for the protection of the Commercial Standard Insurance Company and A. J. Spicer, and the said Commercial Standard Insurance Company, by their counsel agree in open court to pay six per cent (6%) simple interest on said amount from this date until same should be finally released and paid out to the proper parties." The balance to be paid over to the administrator was not passed upon by the court, but was left for distribution under the

orders of the probate court of Independence county. The commissioners have appealed from this order and the attorney for the administrator has appealed from the allowance of the fee to the attorney for the interpleader.

We think this a proper case for the intervention of the interpleader. The railroad company was entitled to know that it would be protected, and that its liability had been fully discharged when it paid into court the sum total for which it had been adjudged liable.

Act 141 of the 1943 session of the General Assembly, page 229, reads as follows:

"Section 1. Where there are two or more adverse claimants to money or property, the person, firm or corporation or association having custody thereof may file a bill of interpleader in the chancery court of any county in which one of the claimants resides or may be served with summons and upon depositing the money or property in the registry of the court, the court shall enter an order releasing and discharging the plaintiff from all liability; and the plaintiff shall recover all of his or its costs and a reasonable attorney's fee to be fixed by the court and taxed as costs in such suit."

The right of the chancery court to hear an interplea is a part of its ancient jurisdiction and was so recognized by the court in the case of *Temple et al.* v. *Lawson,* 19 Ark. 148. It was there held, however, that while the court would exercise its jurisdiction to dispose of the fund paid into the court, it did not order the cost of that proceeding to be paid out of the impounded fund. The effect and evident purpose of Act 141 was to make the fund liable for the cost which someone must pay, but it was thought not equitable that the interpleader should pay more than his liability, and that the claimants should pay the cost of distribution, hence this act. At § 2 of the chapter, Interpleader, 30 Am. Jur., p. 214, it is said: "The basis of the right of interpleader by one from whom several persons claim the same thing, debt, or duty is that it is equitable that the conflicting claimants should litigate the matter among themselves without involving

6

the stakeholder in their dispute.'' The fee allowed the attorney who filed the interplea is reasonable and its allowance is affirmed.

The commissioners assert this act should not be applied here as its application operates to deprive the commission of its exclusive jurisdiction to determine whether an award may be paid in a lump sum and the insurance carrier discharged by such payment. But we have here no award. The commission has never made any order of any kind in this case. We are dealing here with a sum of money derived from a common law action for negligence which did not involve the relation of employer and employee. This is not a case like that of *Young* v. *G. L. Tarlton, Contractor, Inc.*, 204 Ark. 283, 162 S. W. 2d 477, where there was an attempt to circumvent the jurisdiction of the Workmen's Compensation Commission.

The institution of common law action for negligence against the railroad company did not operate to defeat the right to proceed also under the provisions of the Workmen's Compensation Act. Section 40 of this act expressly provides that: ''The making of the claim for compensation against any employer or an insurance carrier for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make claim or maintain an action in tort against any third party for such injury, but the employer or his insurance carrier shall be entitled to reasonable notice and opportunity to join in such action.'' But this dual proceeding in this case would have been unavailing and without profit for reasons presently to be stated.

Act 319 permits a proceeding under its provisions to recover the benefits for which it provides and permits also a separate suit against a third party whose actionable wrong occasioned the death or injury. But it is pointed out in § 40 of this act that: ''The commencement of an action by an employee or his dependents against a third party for damages by reason of an injury, to which this act is applicable, or the adjustment of any such

claim shall not affect the rights of the injured employee or his dependents to recover compensation, but any amount recovered by the injured employee or his dependents from a third party shall be applied as follows: Reasonable costs of collection shall be deducted; then one-third of the remainder shall, in every case, belong to the injured employee or his dependents as the case may be; the remainder or so much thereof as is necessary to discharge in actual amount the liability of the employer and the insurance carrier for compensation, shall be paid to such employer or insurance carrier; and any excess shall belong to the injured employee or his dependents.''

It is not disputed, in fact it is conceded, that had proceedings been brought under Act 319, the maximum award that could have been made to the widow and minor dependents would have been $7,000, to be paid in payments of $20 per week, payable every two weeks. Here we have the recovery of judgment against the railroad company, which with the interest thereon, is more than four times that amount. Under the provisions of § 40 above quoted, there remains, after the costs of collection have been deducted, and the one-third of the remainder, which shall in all cases belong to the injured employee or his dependents, be also deducted, a sum in excess of the carrier's total liability. It was in conformity with this provision of the law that the court made the order for the protection of the insurance carrier.

There was, therefore, no error in making an appropriate order for the protection of the insurance carrier, and there remains to be considered only the question, whether the court had the authority to order a lump sum payment to the administrator for the benefit of the deceased's beneficiaries. The commissioners insist that they only had that power.

In considering this question we must remember that we are dealing with a sum exceeding any award the commission had the power to make, and it must be remembered also that we are considering a fund which did not arise in whole or in part from any award by the commission.

By Sub-section j of § 19 of Act 319 it is provided that: "Whenever the commission determines, after due notice to a hearing of the parties in interest, that it is for the best interests of a person entitled to compensation, the liability of the employer for compensation may be discharged by the payment of a lump sum equal to the present value of all future payments of compensation computed at four (4) per centum discount compounded annually."

We are cited to cases from other jurisdictions construing similar statutory provisions which hold that the discretion to order a lump sum payment abides with the commission and will be exercised only in exceptional cases and that this discretion will not be controlled by the court unless abuse thereof was shown. But even so, it may be repeated that we are not dealing with an award made by the commission.

We find no error in the decree, and it is, therefore, affirmed.

McFADDIN, J., dissenting. I find no provision in the Workmen's Compensation Law (Act 319 of 1939) or in the Interpleader Act (Act 141 of 1943), or in any other constitutional or statutory provision in this State, that allows the Workmen's Compensation Commission, or the individual members thereof, in a case like the one here, to sue or be sued. The Commissioners, in their official capacity, were joined as defendants in this case; and they answered as such. I am strongly of the opinion that there does not exist the privilege of suing, or the liability of being sued in a case like the one here. This question was not presented by counsel, but presents itself as a jurisdictional matter; and I think the majority sets a dangerous precedent in this regard.

But, over and beyond the above point, I am impelled to dissent, because (1) I think the majority has construed Act 141 of 1943 to work a repeal by implication of certain provisions of § 19 of the Workmen's Compensation Law, and (2) a construction of the Interpleader Act could and should have been adopted which would have given

full force and effect to the Workmen's Compensation Law, as well as the Interpleader Act. That repeals by implication are not favored is established by scores of cases in this State. See West's Arkansas Digest, "Statutes," § 158, where these cases are collected.

I. *The Majority Opinion Works a Repeal of Certain Provisions in the Workmen's Compensation Law.* Section 19(a) of the Workmen's Compensation Law says that *compensation* payments may be made without an award. Section 19(b) says "*compensation* shall be made in installments semi-monthly, except where the *Commission* determines" that the payments should be at some other interim. Section 19(j) says "whenever the *Commission* determines, . . . that it is for the best interests of the person entitled to *compensation* that the liability of an employer for such *compensation* may be discharged by the payment of a lump sum," the Commission may make an order to such effect.

In other words, by the Workmen's Compensation Law, the *Commission* is vested with *discretion* to decide whether the best interests of Mrs. Gilbert and her children would be served by making the *compensation* payments in a lump sum or over an extended period of time. I have emphasized the word *compensation* to show that the Commission has jurisdiction over *compensation* payments as well as awards. The majority opinion in the case at bar seeks to differentiate between *compensation* and *award*; and seeks to justify the right of the Chancery Court to make a lump sum payment, on the basis that there had never been an award. Section 19 of the Workmen's Compensation Law refers to *compensation* payments, rather than awards; and the majority has allowed the Interpleader Act to take from the Commission its discretion regarding lump sum payments on a distinction between *award* and *compensation,* whereas § 19 applies equally to compensation.

Before the passage of Act 421 of 1943, the Commission had discretion and jurisdiction to determine whether payments should be in a lump sum, or at stated intervals.

The majority opinion allows this Act 141 of 1943 to repeal by implication that discretion and jurisdiction of the Commission. It is an *implied* repeal, because there is nothing in Act 141 of 1943 even referring to the Workmen's Compensation Law.

II. *A Construction Could and Should Have Been Adopted Which Would Not Have Effected Such Repeal.* The insurance carrier (Commercial Standard Insurance Co.) invoked the Workmen's Compensation Law under the "gentlemen's agreement" (referred to in paragraph three of the majority opinion) before the trial of the damage suit against the railroad company; and that invoking of the benefits of the Workmen's Compensation Law by the insurance carrier put the Workmen's Compensation Law into play between the parties, whether the *compensation* had been made with or without any formal *award*.

The railroad company could have filed its interpleader in the chancery court under Act 141 of 1943, and the insurance carrier could have intervened and set up its rights under § 40 of the Act. The court could have determined the attorneys' fees, and determined that the sum of $5,540 of the balance would be paid to the Workmen's Compensation Commission to be held by that Commission and paid to the insurance carrier when, as, and if the insurance carrier discharged its obligations to Spicer Construction Co., and Mrs. Gilbert and her children. Authority for the payment of the money to the Workmen's Compensation Commission, and by it to the State Treasury, is found in § 48 of the Workmen's Compensation Law. If the interpleader had been handled as above indicated, no lump sum payment would have been made to Mrs. Gilbert and her children in violation of the discretion and jurisdiction of the Workmen's Compensation Commission; and at the same time the insurance carrier would have received full protection and no repeal of any provision of the Workmen's Compensation Law would have been effected by Act 141 of 1943.

Because of the matters stated here, I respectfully dissent from the majority.