St. Paul Fire & Marine Ins. Co. *v.* Wood et al.

5-4148                                    416 S. W. 2d 322

Opinion delivered June 5, 1967

[Rehearing denied July 26, 1967.]

880

*Wright, Lindsey & Jennings,* by *Isaac A. Scott, Jr.,* for appellant.

*Rose, Meek, House, Barron, Nash & Williamson* and *Murphy & Arnold* and *H. David Blair,* for appellee.

CONLEY BYRD, Justice. This appeal calls for construction of § 40 of the Workmen's Compensation Act (Ark. Stat. Ann. § 81-1340 [Repl. 1960]) to determine whether an employee can settle his common law cause of action in negligence against a tort feasor free of any claims of his employer's Workmen's Compensation carrier, where the settlement documents specifically preserve all rights of the carrier.

The facts giving rise to this litigation show that on November 17, 1964, appellee Hershel Wayne Wood was injured while employed as a truck driver by Southern Farmers Association when a hydraulically operated auger on his truck came into contact with a high voltage line maintained by appellee First Electric Cooperative Corporation. As a result of the injury Wood was horribly and terribly burned, shocked, and injured; both feet have been amputated; and a hole was burned in his skull, with undetermined effects on his mind. Appellant St. Paul Fire & Marine Insurance Company, the Workmen's Compensation carrier for Southern Farmers Association, has expended in weekly benefits and medical payments through May 4, 1966, the sum of $26,116.68. In its pleading, St. Paul estimates that its expenditures will reach $50,000.

Following the injury, Wood filed an action against First Electric Cooperative Corporation for the sum of $500,000, alleging negligence on its part in the construc-

tion and maintenance of its power lines in many respects. Appellee, Employers Mutuals of Wausau, is the liability carrier of First Electric and as such is the real party in interest as between it and First Electric.

Appellant St. Paul Fire & Marine Insurance Company intervened in Wood's suit against First Electric under § 40 of the Workmen's Compensation Act, seeking a lien in accordance with the act upon any recovery by Wood for compensation paid and to be paid him.

Before trial of Wood's suit against First Electric, Wood and First Electric agreed on a figure which to their minds represented a fair settlement of the Wood phase of the case, but First Electric and St. Paul were unable to agree on a fair settlement of St. Paul's subrogation claim. It was and is St. Paul's position that it is entitled to receive, after payment of litigation costs and counsel fees, two thirds of any amount Wood might receive, up to the amount of St. Paul's obligations under the Workmen's Compensation Act.

The figure which Wood was willing to receive and Employers Mutuals was willing to pay for Wood's end of the case was $78,000, provided Wood did not have to repay to St. Paul the Workmen's Compensation benefits paid, and provided further that this would not affect his right to further compensation. Employers Mutuals was willing to pay said amount to Wood provided such payment would not make it automatically liable to St. Paul for compensation paid.

In an attempt to accomplish this purpose, Wood, First Electric and Employers Mutuals entered into an escrow agreement pursuant to which Employers Mutuals deposited with a bank at Batesville as Escrow Agent the sum of $78,000, and Wood deposited with the Escrow Agent his Release in the form hereinafter mentioned. The agreement provided in substance that, when it was determined by Wood and his attorney that Wood could receive this sum without being required to reimburse St.

Paul for compensation paid and to be paid, then the Escrow Agent would deliver the $78,000 plus accrued interest to Wood, and the Release to First Electric and its carrier. But if it be determined that Wood could not accept the money and deliver the Release free of St. Paul's claim, then the Escrow Agent would deliver the money plus interest back to First Electric and its carrier, and the Release to Wood.

It was further provided in the Escrow Agreement that if it were determined that the effect of the proposed transaction would be to subject First Electric to liability to St. Paul for compensation paid or to be paid, without regard to negligence on the part of First Electric—that is, automatically—then the Escrow Agent would deliver the money plus accrued interest to Employers Mutuals and the Release to Wood. It was also agreed that if these various determinations were not made until after the statute of limitations had barred another suit by Wood against First Electric, then First Electric and its carrier, Employers Mutuals, would waive the defense of limitations; that if the settlement was consummated, Wood would dismiss his suit without prejudice, and such dismissal would not prejudice St. Paul's right to pursue its claim against First Electric; that nothing in the agreement was intended to or should affect St. Paul's right to do so, and that nothing in the agreement should constitute an admission of liability on the part of First Electric.

Finally, it was agreed that in any suit by Southern Farmers Association or St. Paul against First Electric to recover on its subrogation right under the Arkansas Workmen's Compensation Act, First Electric would not plead as a defense the Release referred to, except as it might be necessary to do so in order to avoid a recovery of more than had been and would be expended by St. Paul.

The proposed Release is in conventional form, except that it contains recitals to the effect that the rights of Southern Farmers Association or St. Paul, which it may have by way of subrogation against First Electric, spe-

cifically including all the rights given under § 40 of the Act, shall not be affected by the Release, and it recites the intention of the parties to leave unimpaired St. Paul's right to litigate against First Electric in order to recover all Workmen's Compensation benefits, past, present and future, paid to or for the benefit of Wood in discharge of its obligation under the Compensation Act.

Wood, to determine his rights under the escrow agreement, filed a cross-complaint, in the pending action, against St. Paul for a declaratory judgment. In this proceeding Wood sought to determine whether he could receive the settlement free of any claims of St. Paul; whether it would affect his rights to receive Workmen's Compensation benefits in the future; and whether St. Paul would be free to assert its own cause of action against First Electric for compensation paid and to be paid.

The case was submitted upon a stipulation of the parties reciting, *inter alia,* the foregoing facts and also reciting that St. Paul took the position outlined in its letter of October 21, 1965, to the Workmen's Compensation Commission, that there was a controversy between the parties as to the legal effect of the proposed settlement. St. Paul's position in said letter was that it understood the case had been settled for $78,000; it claimed a lien thereon under the Act, for compensation paid and payable; and it requested permission to suspend payment of future compensation and future medical. The settlement, of course, has not as yet been consummated, but it is St. Paul's position that if Wood accepts the money and executes the proposed Release, he will have to repay it for compensation paid and payable.

It was also stipulated that First Electric recognized St. Paul's right to pursue its own statutory cause of action against First Electric as provided by law, and that if St. Paul did so, First Electric would not plead in bar of said cause, or as a defense thereto, the release from Wood, except as it might be necessary to prevent recov-

ery for a sum in excess of compensation paid and to be paid. First Electric and Employers Mutuals acknowledge that the proposed settlement, if consummated, will not prejudice or impair such cause of action by St. Paul.

First Electric and Employers Mutuals by stipulation are parties plaintiffs to the cross-complaint filed by Wood against St. Paul.

Upon the pleadings and the stipulations, the trial court approved the proposed settlement as fair and reasonable and entered a declaratory judgment as prayed for.

For reversal, St. Paul relies on one point—*i.e.*, the court should have denied the action of plaintiff for a declaratory judgment and granted St. Paul's statutory lien against the settlement proceeds.

Section 40 of the Workmen's Compensation Act (Ark. Stat. Ann. § 81-1340 [Repl. 1960]) provides:

"*Third party liability.*—(a) *Liability unaffected.*

(1) The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make claim or maintain an action in court against any third party for such injury, but the employer or his carrier shall be entitled to reasonable notice and opportunity to join in such action. If they, or either of them, join in such action they shall be entitled to a first lien upon two-thirds [⅔] of the net proceeds RECOVERED in such action that remain after the payment of · the reasonable costs of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his dependents.

"(2) The commencement of an action by an employee or his dependents against a third party for

damages by reason of an injury, to which this act [§§ 81-1301—81-1349] is applicable, or the adjustment of any such claim shall not affect the rights of the injured employee or his dependents to recover compensation, but any amount RECOVERED by the injured employee or his dependents from a third party shall be applied as follows: Reasonable costs of collection shall be deducted; then one-third [⅓] of the remainder shall, in every case, belong to the injured employee or his dependents, as the case may be; the remainder, or so much thereof as is necessary to discharge the actual amount of the liability of the employer and the carrier; and any excess shall belong to the injured employee or his dependents.

"(b) *Subrogation.* An employer or carrier liable for compensation under this act [§§ 81-1301—81-1349] for the injury or death of an employee shall have the right to maintain an action in tort against any third party responsible for such injury or death. After reasonable notice and opportunity to be represented in such action has been given to the compensation beneficiary, the liability of the third party to the compensation beneficiary shall be determined in such action as well as the third party's liability to the employer and carrier. After RECOVERY shall be had against such third party, by suit or otherwise, the compensation beneficiary shall be entitled to any amount recovered over and above the amount that the employer and carrier have paid or are liable for in compensation, after deducting reasonable costs of collection, and in no event shall the compensation beneficiary be entitled to less than one-third [⅓] of the amount RECOVERED from the the third party, after deducting the reasonable cost of collection.

"(c) *Settlement of claims.* Settlement of such claims under subsections (a) and (b) of this section must have the approval of the Court or of the Commission, except that the distribution of that portion of the settlement which represents the compensation

payable under this act [§§ 81-1301—81-1349] must have the approval of the Commission. Where liability is admitted to the injured employee or his dependents by the employer or carrier, no cost of collection shall be deducted from that portion of the settlement under subsections (a) or (b) of this section, representing compensation, except upon direction and approval of the Commission. [Init. Meas. 1948, No. 4, § 40, Acts 1949, p. 1420.]" (Emphasis ours.)

Section 40(a) (1) recognizes the employee's common law tort action against third persons. It gives the compensation carrier a first lien upon two-thirds of the net proceeds "RECOVERED" in such action. Likewise, § 40(a) (2) provides that the employee's commencement or adjustment of any such action against a third party shall not affect the rights of the injured employee to compensation benefits, but that any amount "RECOVERED" by the injured employee, after the reasonable costs of collection, shall be divided one-third and two-thirds to the employee and the carrier respectively, up to the amount paid or to be paid by the carrier.

Section 40(b) gives the compensation carrier the right to maintain an action in tort against any third party responsible for an injury to an employee. In doing so it provides that after "RECOVERY" shall be had against such third party *"by suit or otherwise"* the employee shall (after deducting the reasonable costs of collection) be entitled to any amount recovered over and above any amount paid or payable by the carrier. Furthermore it provides that in any event the injured employee is entitled to one-third of the amount "RECOVERED" from the third party after the deduction of the reasonable costs of collection.

Section 40(c) was before us in *Winfrey & Carlile* v. *Nickles,* 223 Ark. 894, 270 S. W. 2d 923 (1954). There a recovery was had upon a suit brought pursuant to § 40(a), and the issue was whether an attorney's fee could be allowed upon the net recovery as determined by

the circuit court or whether its allowance was prohibited by the second sentence of subsection (c) as determined by the Workmen's Compensation Commission. We there held that subsection (c) applied only to *compromise settlements* and that the prohibition on the allowance of a fee therein did not apply to a recovery under subsection (a) (1).

It is observed that when dealing with the rights of the compensation carrier under subsections (a) and (b), the statute uses the words "RECOVERED" and "RECOVERY." "RECOVERY" is defined in Black's Law Dictionary (3rd ed.) as follows: "In its most extensive sense, a recovery is the restoration or vindication of a right existing in a person, by the formal judgment or decree of a competent court, at his instance and suit, . . . " Therefore by applying this technical definition to "RECOVERED" and "RECOVERY," except where they are specifically qualified in subsection (b) by the use of the prepositional phrase *"by suit or otherwise,"* we can reach not only a practical construction of the statute, but one consonant with our prior decisions.

In *Barth* v. *Liberty Mutual Insurance Co.*, 212 Ark. 942, 208 S. W. 2d 455 (1948), we had before us a consent judgment releasing in full the third party wherein the money had been paid into the registry of the court. Under the technical definition of the word "RECOVERED" above set out, the distribution of the funds in accordance with the provisions of subsection (a) was proper.

In *Winfrey & Carlile* v. *Nickles, supra,* we made the distinction of a compromise settlement under subsection (c) and a "RECOVERY" under subsection (a). The distribution there made is consonant with the technical definition of "RECOVERY."

In *Maxcy* v. *John F. Beasley Construction Co.*, 228 Ark. 253, 306 S. W. 2d 849 (1957), a compromise settlement fully releasing the third party had been reached

after a suit, pursuant to subsection (a), had been filed in federal court. The matter came to this court from an order of the Workmen's Compensation Commission distributing the proceeds which first deducted the reasonable costs of collection and distributed the balance, one-third to the injured employee and the remaining two-thirds to the compensation carrier. We pointed out the Commission's authority to make the distribution of a compromise settlement under subsection (c), and approved as correct a distribution made in accordance with the statutory scheme authorized in subsections (a) and (b). Since the compromise extinguished the rights of the compensation carrier, it was tantamount to a recovery, and the Commission, under such circumstances in approving the same, properly followed the statutory scheme of distribution; but in so holding, it does not follow that every compromise settlement is a "RECOVERY" within the meaning of subsections (a) and (b).

It is the policy of the law to encourage compromise settlements. If we should accept appellant's construction of the statute, we would be discouraging them in many instances. In discussing the problem in *Lang* v. *Williams Bros. Boiler & Mfg. Co.*, 250 Minn. 521, 85 N. W. 2d 412 (1957), it was said:

"The vice of preventing settlement at all without the consent of the employer or his insurer is that the employee may then be put in a position where, against his will, he must face the uncertainties of a trial. While both employer and employee face the risk that the result of the trial will not equal the amounts offered in settlement or the amount which must be paid in compensation, the employee's burden probably is greater than that of the employer in that ordinarily the employee has no great resources upon which to rely if the gamble of a trial fails, whereas the insurer not only has greater resources but the case as to it is only one of many."

Therefore the most reasonable and practicable construction of subsections (a) and (b) of § 40 is that the

mandatory provisions thereof control where the action is prosecuted to judgment and that subsection (c) is controlling where there is any type of termination prior to the rendition of a judgment against the third party.

While § 40 recognizes that either the injured employee or the compensation carrier may initiate a tort suit against a third party, it requires that reasonable notice of the initiation of such cause of action be given to the other party. Thus there is but one cause of action. In this situation, can we hold that the rule against splitting a cause of action prohibits the compromise settlement here proposed by Wood and First Electric? The answer is that the rule against splitting a cause of action is for the benefit of the defendant to protect him against a multiplicity of suits, and in this instance First Electric and its insurance carrier have specifically agreed to a splitting of the cause of action between St. Paul and Wood.

It is observed that Wood, as an employee, is not obligated under § 40 to further pursue the present action. Nothing therein prevents him from taking a voluntary non-suit, nor would such action on his part affect his right to continue to receive compensation benefits.

In conclusion, we hold that St. Paul, as the compensation carrier, has no lien upon the proceeds of the compromise settlement here negotiated. Under the terms of the proposed compromise, St. Paul has all of the right of subrogation against First Electric that was given to it by law and that it would have had if Wood had taken no action whatsoever. It follows that the trial court properly approved the proposed settlement between Wood and First Electric upon the terms and conditions there set out. To interpret § 40 in the manner suggested by appellants would require us to hold that the statute gives the employer or his compensation carrier a first lien upon RECEIPTS OF ANY MONIES RECEIVED FROM THE THIRD PARTY BY SUIT OR OTHERWISE. The statute does not so read.

Therefore the judgment appealed from is affirmed.

GEORGE ROSE SMITH, J., concurs.

HARRIS, C. J., and BROWN & JONES, JJ., dissent.

GEORGE ROSE SMITH, Justice, concurring. I should like to emphasize, somewhat more than the majority have done, the extent to which the equities in the case favor the claimant, Wood. Under the proposed settlement he will receive $78,000 in settlement of a claim which might well be worth $200,000 if he won the case before a jury. The Co-op's liability, however, is by no means certain; in the event of a trial Wood might recover nothing. As a matter of simple justice he ought to be able to settle his claim as best he can.

On the other hand, St. Paul stands, after the settlement, exactly as it did before the settlement. That is, it is free to sue the Co-op in Wood's name, so that as far as the jury is concerned the case will ostensibly be a genuine lawsuit brought by Wood. Yet, in attempting to block the settlement, St. Paul is in the attitude of being unwilling either to take the risk itself that it would force Wood to take or to indemnify Wood (as he has requested) for the loss of $78,000 if Wood proceeds with his lawsuit against the Co-op and loses. In such a situation our rule that the compensation act must be construed liberally in favor of the workman is peculiarly and demonstrably just.

J. FRED JONES, Justice, dissenting. I cannot agree with what I consider to be the majority's misinterpretation or misapplication of the workmen's compensation law in this case.

Arkansas was the 47th state to adopt a workmen's compensation law and the legislation in this field, as well as the philosophy upon which it is based, both in England and in this country, has a long and interesting history.

All Workmen's Compensation Acts are in derogation of the common law and all of them provide for benefits to an injured employee during disability caused by industrial injury regardless of any negligence, and in spite of contributory negligence involved in causing the injury.

The laws vary to some degree in the various states. In some states the employer pays into a state fund out of which an employee is paid benefits during disability caused by injury sustained during the course of his employment. In other states, including Arkansas, an employer is required to carry insurance protecting the employee against compensable injuries, or the employer may, if he so desires, bear his own losses by qualifying under the law as a self insured.

In some states when an employee is injured while in the course of his employment, but by the common law negligence of some third party, the employee must elect whether he will accept compensation benefits from his employer or the employer's compensation insurance carrier, or whether he will pursue his claim against the third party tort-feasor. In Arkansas the injured employee may do both. He may claim his compensation benefits from his employer or the employer's insurance carrier and at the same time he, or his employer, or both of them together, may pursue the claim against the third party tort-feasor under Ark. Stat. Ann. § 81-1340 (Repl. 1960).

It is the text and intent of § 81-1340, that the employer, or his insurance carrier, shall be liable in any event to the injured employee for injury growing out of, and occurring within the course of the employment. It is also the text and intent of § 81-1340, that the employer, or his insurance carrier, recoup all or a part of the losses they pay in compensation benefits, out of damages recovered from the third party tort-feasor whose negligence caused the employer, or his insurance carrier, to be liable for the compensation benefits and whose negligence caused the employee to suffer injuries and damages. In such a case both the employer and the employee have been

damaged by the same tort-feasor and in the same accident, and by the same negligent act, and they share in the same recovery by action, settlement, or otherwise.

It should be remembered that the very same act that gives the employee his right of recovery against his employer regardless of fault, and at the same time preserves his common law right of recovery from a third party causing his injury, also gives to the employer a right to share in the recovery from the third party causing the injury, to the extent and only to the extent, of what the employer has been forced to pay and will be forced to pay, because the injury caused by the third party and through no fault of the employer.

It is my view that when appellant joined in the action in this case, it perfected its lien on two-thirds of the net proceeds recovered, or that will be recovered, from the third party tort-feasor (or its insurance carrier) in this case under the plain wording of paragraph (a) (1) of Ark. Stat. Ann. § 81-1340 (Repl. 1960), and I am of the view that except for the majority opinion in this case, it would require an act of the Arkansas Legislature to remove that lien. It is my further opinion that even an act of the legislature could not remove the lien that has already attached in *this case*.

The employee's right of action against a third party and the employer's share therein are carefully and clearly set out in Ark. Stat. Ann. § 81-1340 (Repl. 1960). This statute is sound in logic; it is sound in principle, and the plain wording of the statute has been fully administered in Arkansas and its plain meaning never questioned until now. But now, by what I consider a strained interpretation of the word "recovered" the majority destroys not only the subrogation rights of an employer, or his insurance carrier, in the first $78,000.00 of a recovery from a third party tort-feasor, but destroys and repeals a statutory lien fixed by law on that amount.

Ark. Stat. Ann. § 81-1340 (a) (1) is as follows:

"The making of a claim for compensation against any employer or carrier for the injury or death of an employee shall not affect the right of the employee, or his dependents, to make claim or maintain an action in court against any third party for such injury, but the employer or his carrier shall be entitled to reasonable notice and opportunity to join in such action. *If they, or either of them, join in such action they shall be entitled to a first lien* upon two-thirds [⅔] of the net proceeds recovered in such action that remain after the payment of the reasonable costs of collection, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his dependents." (Emphasis supplied.)

All of the recovery against a third party tort-feasor in a compensation case, simply does not belong to the injured employee. That part of the recovery for injury which the employer has already paid, belongs to the employer, or his insurance carrier, and by joining in a cause of action against the third party the employer perfects his statutory lien.

The legislature carefully preserved the employee's right to compensation benefits from his employer under the act, regardless of the action or its results against the third party, and the legislature carefully and definitely set out how the amount recovered from the third party, either in an action for damages or the adjustment of a claim, shall be divided between the employee and the employer, or its insurance carrier. Ark. Stat. Ann. § 81-1340 (2), is as follows:

"*The commencement of an action* by an employee or his dependents against a third party for damages by reason of an injury, to which this act [§§ 81-1301—81-1349] is applicable, *or the adjustment of any such claim* shall not affect the rights of the injured employee or his dependents to recover compensation, but any amount recovered by the injured employee

or his dependents from a third party shall be applied as follows: Reasonable costs of collection shall be deducted; then one-third [⅓] of the remainder shall, in every case, belong to the injured employee or his dependents, as the case may be; the remainder, or so much thereof as is necessary to discharge the actual amount of the liability of the employer and the carrier; and any excess shall belong to the injured employee of his dependents.'' (Emphasis supplied.)

Thus it is seen that the rights of the employer, or his insurance carrier, and the rights of the employee are merged into a single cause of action against the third party tort-feasor causing the injury and loss. These two subsections (a) (1) and (2) not only place the employer and injured employee in common interest with a single cause of action against the third party, these subsections specifically spell out how the recovery from the tort-feasor is to be divided between the employer and employee where the employee brings the action or compromises the claim. Where the employer, or his carrier, *joins in the action,* a lien is perfected under (a) (1) and where they do not join in the action or where there is no action brought for them to join in, the employer, or his insurance carrier, is still entitled to the same amount under (a) (2), but no lien can be perfected.

If for any reason the employee is satisfied with compensation benefits and does not see fit to pursue his claim against the third party tort-feasor, the employer, or his insurance carrier, may do so. But in that event, the employee must be notified, so that he may employ his own counsel if he desires to do so. The injured employee is not required to intervene at all in the cause of action brought by the employer or insurance carrier. The employee may simply continue to receive his compensation payments and do nothing in the third party action and still be entitled to exactly the same division of any recovery as he would be entitled to had he brought the action and the employer had intervened under (a) (1), or had

sued or settled without joinder of action under (a) (2). Ark. Stat. Ann. § 81-1340 (b) (Repl. 1960) is clear and unambiguous as to the rights of the parties where the employer, or carrier, brings the action, and this section is as follows:

"An employer or carrier liable for compensation under this act [§§ 81-1301—81-1349] for the injury or death of an employee shall have the right to maintain an action in tort against any third party responsible for such injury or death. After reasonable notice and opportunity to be represented in such action has been given to the compensation beneficiary, the liability of the third party to the compensation beneficiary shall be determined in such action as well as the third party's liability to the employer and carrier. After recovery shall be had against third party, by suit or otherwise, the compensation beneficiary shall be entitled to any amount recovered over and above the amount that the employer and carrier have paid or are liable for in compensation, after deducting reasonable costs of collection, and in no event shall the compensation beneficiary be entitled to less than one-third [⅓] of the amount recovered from the third party, after deducting the reasonable cost of collection."

Thus we see that there are three methods of procedure in third party compensation cases: (a) (1)—The employee may commence the action and the employer, or his carrier, join and perfect its lien. (a) (2)—The employee may bring an action or compromise with or without action and the employer, or carrier, do nothing. (b) —The employer, or carrier, may bring an action and the employee do nothing.

Under the provisions of § 81-1340, the division of the proceeds between the employee and his employer, or carrier, recovered from the third party is exactly the same whether the employer joins in an action brought by the employee under (a) (1), or doesn't join in action

brought or adjustments made by the employee under (a) (2), or is brought by the employer or his insurance carrier alone under (b). The only difference being that the employer has a *lien* when he intervenes or joins the employee in a cause of action under (a) (1).

When the compensation carrier joined in the action in the case at bar, it fixed its statutory "first lien upon two-thirds [⅔] of the net proceeds recovered in such action that remain after the payment of the reasonable costs of collections, for the payment to them of the amount paid and to be paid by them as compensation to the injured employee or his dependents."

The injured employee in this case has a right to adjust his claim against the tort-feasor for $78,000.00 and such adjustment "shall not affect the rights of the injured employee or his dependents to recover compensation, but any amount recovered by the injured employee * * * *should be* (the statute says 'shall be') applied as follows: Reasonable costs of collection shall be deducted; then one-third [⅓] of the remainder shall in every case belong to the employee * * * ; the remainder, or so much thereof as is necessary to discharge the actual amount of the employer and the carrier; and any excess shall belong to the injured employee * * * ."

*Winfrey & Carlisle* v. *Nickles* cited by the majority is anemic precedent for their holding in this case. In the Nickles case the compensation carrier was paid its two-thirds of the recovery as has always been done until now, and no question arose as to that being the proper distribution under the law. The argument in the Nickles case was whether the court or the commission would approve the attorney's fees on that portion of the settlement representing compensation. Section (c) of Ark. Stat. Ann. § 81-1340 is not involved in the case at bar.

I am unable to follow the reasoning of the majority on their construction of this court's holding in *Barth* v. *Liberty Mutual.* In the Barth case the claimant drew all

he was entitled to draw under the Compensation Act. He then attempted to defeat the employer, or compensation insurance carrier's, rights in two-thirds of the recovery against a third party by simply bringing an action for pain and suffering (not compensable under the act). He settled his claim by consent judgment and this court simply affirmed the trial court in holding that the compensation carrier was entitled to the enforcement of its lien on two-thirds of the net recovery.

All the Arkansas cases cited by the majority recognize the lien right of the employer, or his compensation carrier, to two-thirds of the net proceeds recovered from the third party tort-feasor. *Maxcy* v. *Beasley* cited in the majority opinion is as good as any Arkansas case on the point. In the Maxcy case, in distributing the proceeds of a third party settlement under section (c), the commission approved a fifty per cent fee to be first deducted as a part of the cost of collection from the proceeds of the recovery. One-third of the remainder was then distributed to the injured employee and the remaining two-thirds to the compensation insurance carrier. The claimant's attorney claimed an additional fee from the compensation carrier's two-thirds of the recovery. This was denied by the commission, the Circuit Court, and this court, and in connection with the compensation carrier's rights under (a)(1) and (2) of the act, this court set out these two sections of the act and then said:

> "It seems clear to us that the above section, after giving an injured employee the right to sue a third party for his injury and providing that the employer may join in such action and thereby be entitled to a first lien on two-thirds of the net proceeds recovered, and providing that the commencement of such action should not affect the employee's right to recover compensation, there is the further provision that any amount recovered by the employee from a third party shall be applied after deducting reasonable costs of collection: '—One-third of the remainder shall in every case belong to the injured employee

or his dependents as the case may be; and the remainder or so .much thereof as is necessary to discharge the actual amount of the liability of the employer and the carrier; and any excess shall belong to the injured employee or his dependents.

"It is our view that the order of the commission directing distribution, after allowing reasonable costs of collection, in the circumstances here is strictly in accordance with the above statutory authority and is correct.

"As indicated, the settlement here was effected without the suit being contested in federal court. It was a voluntary compromise settlement and we think the commission, under the authority of Section 81-1340 (c) had the right to approve the allowance of attorney's fee and other reasonable costs of collection where, as here, a voluntary settlement was made. The commission, after allowing Whetstone $142.40 expenses, itemized as follows:

$ 16.50 Court Costs

100.10 Court Reporter

15.00 Clerk Costs

2.00 Marshal's Fee

8.80 Pictures

allowed Maxcy one-third of the balance of $4,851.60, or $1,617.20, and allowed the insurance carrier, Liberty Mutual, $3,234.40 which was $495.96 less than it had paid Maxcy in compensation benefits.''

The injured employee in the case at bar filed a suit in tort against the third party defendant, and the employer's compensation carrier joined in the action. The employee and the defendant are attempting to adjust (by

declaratory judgment) the third party claim by payment of $78,000.00 rather than hazard the verdict of a jury. The defendant has agreed to pay $78,000.00 and the employee has agreed to accept $78,000.00 *net to himself* and unencumbered by the first lien of the employer's compensation carrier. In other words, the injured employee and the third party defendant are reasonably close to a settlement in this case. Only the amount due the compensation carrier stands between the employee and the third party in reaching a settlement figure.

The employee in this case sustained horrible injuries and the amount of medical expenses the employer's compensation carrier has paid, and will continue to pay, is eloquent enough testimony as to extent of injuries. The compensation carrier has refused to relinquish its first lien on the proceeds of the proposed compromise settlement, and perhaps has not gone as far as it should toward sharing in a loss by compromise. But, we are confronted with a matter of law in this case, and the law was not designed to fit this case alone.

I would continue to follow the procedure laid down in § 81-1340, supra, as I interpret it, and as has been followed without question in all cases to date where a division of a third party recovery is involved. I would continue to follow the procedure that was followed in *Winfrey & Carlile* v. *Nickles,* 223 Ark. 894, 270 S. W. 2d 923; *Barth* v. *Liberty Mutual Insurance Co.,* 212 Ark. 942, 208 S. W. 2d 455; *Maxcy* v. *John F. Beasley Construction Co.,* 228 Ark. 253, 306 S. W. 2d 849; *Gilbert* v. *Missouri Pacific Railroad Co.,* 208 Ark. 1, 185 S. W. 2d 558; *McGeorge Contracting Co.* v. *Mizell,* 216 Ark. 509, 226 S. W. 2d 566.

I would reverse.

HARRIS, C. J., and BROWN, J., join in dissent.