THE TRAVELERS INSURANCE
COMPANY *v.* GEORGE McCLUSKEY

5-5999                                    483 S.W. 2d 179

Opinion delivered July 10, 1972
[Rehearing denied August 28, 1972.]

*Terral, Rawlings, Matthews & Purtle,* for appellant.

*McMath, Leatherman & Woods,* for appellee.

JOHN A. FOGLEMAN Justice. Appellee McCluskey was injured by reason of the breaking of a wrench he was using on a construction job at Reynolds Metals Company plant at Patterson as an employee of Erection Service Company for which Travelers Insurance Company was the workmen's compensation insurer. Travelers paid workmen's compensation benefits to McCluskey, who later filed suit against Reynolds, Clarence Weiman, the job superintendent who furnished the wrench, and Proto Tool Company, the manufacturer of the wrench, as third-party tortfeasors. He was represented in this suit by Judge Sam Robinson, who associated the firm of McMath, Leatherman, Woods and Youngdahl. The firm of Terral, Rawlings, Matthews and Purtle represented Travelers in connection with its subrogation claim against the third-party tortfeasors. Mr. Gail O. Matthews of the Terral firm had a telephone conversation with Mr. Henry Woods of the McMath firm about Travelers' subrogation claim. Matthews followed up the conversation with a letter dated May 30, 1968, which read as follows:

> This will confirm our telephone conversation of May 28, 1968, wherein I advised you that I represent Travelers, the Workmen's Compensation carrier for your client, and further confirm that you would honor our subrogation rights.
>
> To date, Travelers had paid the sum of $1,870.00 temporary total and temporary partial and $3,469.00 medical. It looks like we will be paying for a long time to come.
>
> Please call me prior to settlement or trial so I can advise you of our exact amount of interest in the case.

There was no response to this letter, but there was further correspondence between the law firms, to some of which we will later make reference.

Eventually the case came to trial in the United States

District Court in Little Rock. McCluskey and his attorneys encountered unforeseen difficulties in the trial, and a verdict in favor of Proto Tool Company was directed. When this occurred the liability insurance carrier for Reynolds made an offer of $23,000 to settle the claim of McCluskey. The offer was accepted by appellee upon the condition that none of it would have to be paid to Travelers, and specified that payment be made under circumstances that would protect Travelers' interest by permitting it to proceed with the lawsuit. Travelers had not filed any intervention in the suit and no notice of the offer or the settlement was given to it or its attorneys, either before or after it was effectuated. The release of Weiman and Reynolds Metals executed by McCluskey and his wife contained a reservation of McCluskey's rights to workmen's compensation benefits and a recognition by the parties that all rights of the employer and Travelers by way of subrogation or otherwise against any party except George McCluskey and wife remained unimpaired and unaffected by the release and settlement.

After the settlement was made, McCluskey filed a claim for additional workmen's compensation benefits with the Workmen's Compensation Commission, but it was resisted by appellant, which claimed a lien upon the net proceeds of the settlement made by McCluskey. The Workmen's Compensation referee held for appellant on the basis of estoppel and by holding that there had been a "recovery" by McCluskey under Ark. Stat. Ann. § 81-1340 (Repl. 1960). The Workmen's Compensation Commission reversed the referee's decision, holding that appellant had no lien, because it did not intervene, and that the agreement between the attorneys was carried out. The circuit court affirmed the commission.

Appellant relies upon three points for reversal. They are:

I. That appellee is estopped to deny that appellant is entitled to a two-thirds lien upon appellee's net recovery.

II. This case is not controlled by *St. Paul* vs. *Wood.*

III. The court should overrule or modify *St. Paul* vs. *Wood.*

For these reasons hereinafter stated we affirm the judgment.

We shall first treat appellant's second and third points before considering its first point.

## Points II. and III.

Appellant argues that our holding in *St. Paul Fire & Marine Ins. Co.* v. *Wood*, 242 Ark. 879, 416 S.W. 2d 322, does not control here because the workmen's compensation carrier intervened in that action and was present during all negotiations, while no offer was ever made to appellant by the carrier in this case. Our decision in the cited case did not wholly turn upon this consideration. The question there was stated in the first paragraph of the opinion, thus:

> This appeal calls for construction of § 40 of the Workmen's Compensation Act (Ark. Stat. Ann. § 81-1340 Repl. 1960) to determine whether an employee can settle his common law cause of action in negligence against a tortfeasor free of any claims of his employer's Workmen's Compensation carrier, where the settlement documents specifically preserve all rights of the carrier.

The workmen's compensation carrier's position, on appeal, was thus stated:

> For reversal, St. Paul relies on one point—i.e., the court should have denied the action of plaintiff for a declaratory judgment and granted St. Paul's statutory lien against the settlement proceeds.

Our holding was based largely upon our determination that the word "recovery" in the sense that it and the verb form "recovered" are used in Ark. Stat. Ann. § 81-1340 (a) and (b), relates to restoration or vindication of a right existing in a person by the formal judgment or decree of a competent court, at his instance and suit, unless specifically qualified by accompanying words. We pointed out the distinction made between a recovery under § 81-1340 (a) and (b) and a settlement under § 81-1340 (c) in *Winfrey & Carlile* v. *Nickles, Admr.*, 223 Ark. 894, 270 S.W. 2d 923. We also said that a compro-

mise settlement that extinguished the rights of the compensation carrier was tantamount to a recovery, under § 81-1340 (a) and (b), citing *Maxcy* v. *John F. Beasley Construction Co.*, 228 Ark. 306 S.W. 2d 849. Ultimately, in affirming the trial court we said that the compensation carrier in *Wood* had no lien upon the proceeds of the settlement negotiated, that the workmen's compensation carrier had all the right of subrogation against the third party that was given it by law and all that it would have had if Wood had taken no action whatsoever. We noted that nothing in Ark. Stat. Ann. § 81-1340 prevented Wood from taking a nonsuit. We also pointed out that to interpret § 81-1340 as the carrier argued would require us to hold that the statute gives the employer or his compensation carrier a first lien upon receipts of any monies received from the third party by suit or otherwise, but that the statute does not so read.

The attorneys representing all the parties who participated in the settlement of the McCluskey suit in Federal court clearly thought that the decision in *Wood* gave the tortfeasor and the injured employee complete freedom to make any settlement of the case they agreed upon without consulting the employer or workmen's compensation carrier, so long as recognition was given to the right of the employer or carrier who was paying, or had paid, benefits to the employee to pursue its own statutory cause of action against the third-party tortfeasor. It is also apparent that the Workmen's Compensation Commission so construed that decision. Even though the circuit judge expressed his personal disagreement with the majority position in *Wood*, he felt that it was controlling in this case and required an affirmance of the Commission's holding. The United States District Court for the Eastern District of Arkansas has interpreted our holding in *Wood* to mean that § 81-1340 (a) and (b) do not apply where the tort claim is settled without litigation or prior to judgment. *Boehler* v. *Insurance Company of North America*, 290 F.Supp. 867 (1968). There are members of this court who participated in that decision, both on the majority and minority sides, who also construe the *Wood* opinion to permit such a settlement between the employee on the one hand, and the employer and carrier on the other. We may be sure that many, many

such settlements have been made in complete reliance upon this construction of *Wood* during the four years intervening between the *Wood* decision and the circuit court's affirmance in this case. We cannot say that there was error in the application of *Wood* made by the attorneys for McCluskey, Weiman and Reynolds and its liability insurance carrier, and by the Workmen's Compensation Commission and the circuit judge. In reaching this conclusion, however, we point out that appellant does not argue that the requirements of Ark. Stat. Ann. § 81-1340 (c) have any application here or that they dictate a different result. We find no reference to this subsection in the referee's opinion, the full Commission opinion, in the circuit judge's opinion, or in appellant's brief.

Appellant does argue, however, that our holding in *Wood* should be overruled or modified for the reason that it is manifestly unfair to a workmen's compensation carrier, because it has a poor chance to recover when a suit is conducted in its name. Our decision in that case involved the construction of a statute which has not been amended in either of two regular sessions of the General Assembly intervening between that decision and this. We have no inclination to overrule it, and have no hesitation in holding that the parties in the suit against the third-party tortfeasors were justified in relying upon their construction of that decision.

In urging modification, appellant suggests that we hold that third-party tortfeasors should not be allowed to settle with an employee, unless and until the same "percentage offer" is made to the workmen's compensation carrier. Appellant agrees that the principles of *St. Paul* v. *Wood* were properly applied in that case because the carrier there was demanding substantially more than the injured employee was willing to accept. Still, says appellant, the employee should not be able to settle and leave the compensation carrier out in the cold. We are unwilling to accept the premise that an insurnace carrier cannot recover in a proper case, even if we should eventually hold, as we have not, that such a carrier must prosecute in its own name its subrogation claim for benefits paid and those ultimately to be paid because of our real party in interest statute [Ark. Stat. Ann. § 27-801 [Repl. 1962).]

Although we do not feel that our holding in *Wood* should be modified as appellant suggests, we are impressed with appellant's argument about the fundamental unfairness inherent in permitting an injured employee to make such a settlement as was made here, under the circumstances which existed. In *Wood*, the carrier had intervened, but the tortfeasor and the compensation carrier were unable to agree upon a settlement of the subrogation rights. While we there emphasized the difference between a recovery under § 81-1340 (a) or (b) and a compromise settlement under § 81-1340 (c), we did point out that (c) was controlling where there is any type of termination of an action against a third-party tortfeasor prior to the rendition of a judgment against the third-party. We also noted that the trial court had, in the very proceeding we were reviewing, approved the settlement between Wood and the third-party tortfeasor. We did say in Wood that § 81-1340 does not so read as to *require* a holding that the statute gives the employer or compensation carrier a first lien upon receipts of any monies received from the third-party by suit or otherwise. We also said in *Winfrey & Carlile* v. *Nickles* that the subsection (c) does not apply to a contested suit between the employee and the compensation carrier.

We have held that, where a settlement was made by an injured employee with a third-party tortfeasor before the filing of a workmen's compensation claim, § 81-1340 (c) was not applicable to the third-party tortfeasor. *Hartford Insurance Group* v. *Carter*, 251 Ark. 680, 473 S.W. 2d 918. The application of those cases should be confined to the particular situations there involved. Fundamental fairness, justice and reason dictate that subsection (c) should apply to any settlement. We have already said in *Carter*, decided well after the circuit court acted in the case now before us, that *St. Paul Fire & Marine Ins. Co.* v. *Wood* involved a compromise having court approval pursuant to subsection (c). We also said that the purpose of this subsection was to permit the adjustment of such controversies between the employee and employer as existed in *Wood* and to require that settlements as between them have the approval of either the court or the Workmen's Compensation Commission.

Since the statutory purpose of § 81-1340 is to protect the rights of both the compensation carrier and the employee, we shall hereafter interpret *Wood* to require that as between the employer (or carrier) and employee, the proceeds of *any* compromise settlement of a tort claim be subject to the lien of the employer or the compensation carrier unless the settlement has been approved by a court having jurisdiction or by the Workmen's Compensation Commission, after the compensation carrier has been afforded adequate opportunity to be heard.

## Point I.

Appellant argues that appellee is estopped by the conduct of his attorney from denying that Travelers is entitled to a lien upon the net proceeds of the settlement received by him. In making this argument, appellant asserts that: appellee's attorney was given the choice of "honoring" appellant's subrogation interest or having appellant intervene in the action, and agreed to "honor" the subrogation as evidenced by the letter of confirmation set out above; appellee's attorney agreed to handle the interest of appellant in return for appellant's attorney agreeing not to intervene, in order to enable appellee to prevent any mention of the payment of workmen's compensation benefits in the presence of the jury at the trial against the third parties; in reliance upon the representation that its subrogation rights would be "honored" appellant did not intervene. In making this argument, appellant's definition of the verb "honor" differs from ours. It relies upon the definition of the word as a noun, and asserts that implicit in the alleged agreement was an understanding that appellant's attorney would handle the claim for appellant. We understand the verb "honor" in the context in which it is used to be synonymous with the words esteem, respect and recognize. See Webster's New International Dictionary, Second and Third Editions. At least, it was not unreasonable for the word to be given such a meaning. Be that as it may, we have held that the doctrine of estoppel cannot be applied when anything is left to inference, argument or itendment. *Ford Motor Credit Co. v. Exchange Bank & Trust Co.*, 251 Ark. 881, 476 S.W. 2d 208. We said that the party setting up an estoppel mu t prove it strictly,

that there must be certainty to every intent, that the facts constituting it must not be taken by argument or inference and that nothing can be supplied by intendment.

Even though appellant hinges its argument on this point upon the letter from Matthews to Woods and the subsequent motion of appellee's counsel to prevent mention of workmen's compensation payments in the tort action, it has been suggested that estoppel may be based upon subsequent communications between the appellant's representatives and appellee's attorney. Yet these subsequent communications seem to be at least as consistent with appellee's position as with appellant's. Letters went from Matthews to Woods on March 5, 1969, September 9, 1969, and October 29, 1969, the texts of which read:

> If you get to the point where it appears that this case may be settled, please call me as Travelers has made additional payments since my letter of January 3, 1969.
>
> * * *
>
> Since our letter of May 30, 1969, we have paid numerous bills. Would you please advise us of the status of the third party action and if we may be of help, feel free to call us.
>
> * * *
>
> As you probably know, Travelers has paid a lot of money to Mr. McCluskey under the Workmen's Compensation coverage since the suit was filed.
>
> Prior to serious settlement negotiations, please call me or Bill Stringfellow so we can give you an up to date figure on the WCC subrogation.

On the eve of trial, the information mentioned in the previous correspondence was furnished by a letter from W. R. Stringfellow, Supervising Adjuster for appellant, a copy of which went to Matthews. Stringfellow admitted that Woods had said that the trial would take place in a day or two when he requested the up-to-date statement of medical expenses. The stated purpose for requests for a call prior to settlement regotiations could well be taken to have been accomplished.

Appellee argues forcefully that his attorney did exactly what he impliedly agreed to do, i.e., "honor" the subrogation rights of appellant by preserving them when confronted with an offer advantageous to appellee, which did specifically exclude any offer to the Workmen's Compensation carrier. We certainly cannot say that this argument is groundless. Under the principle stated in *Ford Motor Credit Co.v Exchange Bank & Trust Co.,* supra, we cannot declare an estoppel as a matter of law in this case. Even if the evidence is taken to present a question of fact, we cannot say that the finding of the commission adverse to appellant was without substantial evidentiary support. The commission found that the only agreement between the attorneys in this case was that the subrogation rights of appellant would be protected and that they were protected by providing in the settlement that appellant could file and prosecute any claim it might have, thus clearly rejecting the referee's finding that there was an estoppel.

We do not consider that appellant's effort to establish a custom or course of dealing between appellant and appellee's attorney in other cases requires us to hold that appellee was estoppel. It is at least doubtful that appellee could be estopped by a course of conduct followed by his attorney in matters wholly apart from the attorney's employment by the client. There is nothing whatever to show that McCluskey had any knowlege or notice of this custom or course of dealing. But even if appellee could be bound, appellant did not show such a course of dealing as would enable us to apply the doctrine of estoppel as a matter of law. In an endeavor to establish such a custom, appellant introduced one letter addressed by its attorneys to the McMath firm in December 1967, in which Woods was specifically asked to advise if he wanted the Terral firm to intervene, or if he would protect Travelers' statutory lien without charge. This is a request far different from any implied from the correspondence relating to this case. Matthews testified that he had the same agreement with Woods in every case in which Travelers had a lien as that evidenced by the letter introduced. The case referred to in this letter resulted in a judgment in favor of the injured employee and a substantial payment was

made to Travelers out of that recovery. Stringfellow testified that there had been a number of cases in which Woods had obtained judgments in which Travelers had a subrogation interest. He was unable to recall any where settlement was reached during trial, and particularly when settlements negotiations arose suddenly during trial. We could not say that this evidence established an estoppel as a matter of law

Appellant advocated a theory upon oral argument not theretofore advanced at any stage of the proceeding. It was that appellee was a trustee for appellant in the matter and that this action violated his fiduciary duties to appellant, entitling appellant to a lien on the settlement proceeds. It relies upon *McGeorge Contracting Co.* v. *Mizell*, 216 Ark. 509, 226 S.W. 2d 566. We cannot consider an argument made for the first time on appeal. *Rhodes* v. *Earl Gill Enterprises*, 245 Ark. 279, 431 S.W. 2d 846. Furthermore, the authority relied upon was not mentioned in appellant's brief and not furnished to opposing counsel prior to argument as our rules require. Rule 18 (j), Supreme Court Rules, Supplement 1971, Volume 3A, Arkansas Statutes Annotated. We may say, however, that, in *McGeorge,* the third-party tortfeasor was seeking to compel the workmen's compensation carrier to be made a party to an action against the tortfeasor by the injured employee. We held that this was not required by our "real party in interest" statute, based upon the dual bases of the insured's relation of trustee toward the insurer and the right of the wrongdoer not to have the cause of action against him split. We have specifically approved the splitting of the cause of action by settlement in a case such as this in *St. Paul Fire & Marine Ins.* v *Wood,* 242 Ark. 879, 416 S.W. 2d 322. Distinctions made in *Wood* are also applicable here with reference to the trust relationship, because it was held, in *McGeorge,* to apply to the proceeds of recovery by judgment. We also said that a settlement which extinguishes the insurer's rights is tantamount to a recovery by judgment.

While appellant nowhere argues that by the steps taken after appellee's tort suit was filed it did "join in such action" as it was entitled to do, it has been suggested that this is the case. This court has always

referred to this procedure as if the words "join in" meant intervene. See *McGeorge Contracting Co.* v. *Mizell,* supra; *Winfrey & Carlisle* v. *Nickles,* 223 Ark. 894, 270 S.W. 2d 923. In *McGeorge* we said: "An insurance company would be a proper party plaintiff should it so request, or intervene, but it would not be a necessary or indispensable party." After saying in *Winfrey* that Ark. Stat. Ann. § 81-1340 recognizes separate causes of action in the compensation beneficiary and in the compensation carrier, we added:

> By subsection (a) the compensation beneficiary is permitted to institute the action, with notice to the carrier so that it may intervene.

Actually intervention is the only means recognized for one who was not joined as a plaintiff by the party filing an action to "join in such action." In *Gorham* v *Hall,* 172 Ark. 744 290 S.W. 357, We said:

> Intervention, in practice, is a proceeding in a suit or action by which a third person is permitted by the Court to make himself a party. In practice an intervention is the admission by leave of court of a person, not an original party to the pending legal proceeding, by which such person becomes a party thereto for the protection of some right or interest alleged by him to be affected by such proceeding. Literally, an intervention means the act of fact of intervening; any interference that may affect the interest of others —interposition. Webster's International Dict.; 33 C. J. 476. See, also, 20 R. C. L. 682, where "interpleader" and "intervention" are defined and the distinction drawn between them.

The subject is also treated in 59 Am. Jur. 2d, Parties, § § 129, 130, at p. 552, et seq., viz:

> Persons who are not parties of record to a suit have no standing therein which will enable them to take part in or control the proceedings. If they have occasion to ask relief in relation to the matters involved, they must either contrive to obtain the status of parties in such suit or they must institute an independent suit.

* * *

By the process of "intervention" a person not originally nally made a party may be permitted on his own application to obtain the status of a party to the previously instituted action. The purpose of the procedure is to enable anyone having an interest in a subject of litigation to interject himself into the case in timely season to protect his rights and to obviate delay and multiplicity of actions.

* * *

The term "intervention" with reference to judicial proceedings has a settled meaning, namely, the act by which a third party becomes a party in a suit pending between other persons, or, more specifically, the act by which a person not a party to a pending action voluntarily or by his own application becomes a party thereto.

Literally, an "intervention" means the act or fact of intervening—any interference that may affect the interest of others. In legal terminology, "intervention" is the proceeding by which one not originally a party to an action is permitted, on his own application, to appear therein and join one of the original parties in maintaining the action or defense, or to assert a claim or defense against some or all of the parties to the proceeding as originally instituted. Stated another way, "intervention" is the admission by leave of court of a person not an original party to the pending legal proceeding, by which such person becomes a party thereto for the protection of some right or interest alleged by him to be affected by such proceeding.

It can readily be seen that appellant did not "join in such action." Actually, appellant's argument that it was entitled to a lien by estoppel is premised upon the theory that it did not join in the action, in reliance on acts and conduct of appellee's counsel. The theory that appellant did, in effect, join in th action is inconsistent with its theory of estoppel.

It is indeed regrettable that any misunderstanding should arise between two capable and reputable attorneys. But we cannot compensate for losses sustained as

a result of such an unfortunate difference, except as permitted by application of legal principles. Under the governing law in this case, we must affirm the judgment.

George Rose Smith and Brown, JJ., dissent as to Point I.