**Monroe FROMAN et al., Plaintiffs and Defendants-Appellees,**

**v.**

**SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, a Mississippi Corporation, Intervenor-Appellant.**

**No. 75–1265.**

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 10, 1975.

Decided Jan. 21, 1976.

Jesse B. Daggett, Marianna, Ark., for intervenor-appellant.

Herman W. Eubanks, Little Rock, Ark., for plaintiffs and defendants-appellees.

Before HEANEY, WEBSTER and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

On March 31, 1975 the United States District Court for the Eastern District of Arkansas, Eastern Division,[1] entered an order approving a settlement of a personal injury suit brought by Monroe Froman and Imogene Froman, his wife, citizens of Arkansas, against Three Way Trucking Company, a Missouri corporation, Horace W. Johnson, d/b/a Horace W. Johnson Produce Company, and Rickie C. Headley, both citizens of Missouri.[2] The settlement was approved over the objection of appellant, Southern Farm Bureau Casualty Insurance Company, which had intervened in the case as the workmen's compensation insurance carrier of Froman's employer, Bill Norman's Service Station of Brinkley, Arkansas, and the intervenor appeals from the order of approval. The appellees are the original parties to the litigation in the district court; all parties will be referred to as they appeared in that court.

The suit arises out of the fact that on December 18, 1972 plaintiff, Monroe Froman, while covered by workmen's compensation insurance issued by intervenor, and while in the course of his employment, was seriously and apparently permanently injured when the defendant, Headley, crashed the tractor-trailer vehicle which he was operating into the pumps of the Norman Service Station.

The vehicle just mentioned was owned by the defendant Three Way Trucking Company, but had been leased by that corporation to the individual defendant, Horace W. Johnson. Johnson was the sole stockholder of the corporate defendant. At the time of the accident either Three Way or Johnson held an automobile liability insurance policy that was applicable to the accident; the limit of liability under that policy was $50,000.00.

As permitted by § 40(a) of the Arkansas Workmen's Compensation Act, Ark. Stat.Ann. § 81–1340(a), Froman filed suit against all three defendants alleging that he had sustained damages far in excess of the $50,000.00 available to the defendants as liability insurance. Froman was joined in the suit by his wife, Imogene Froman, who claimed a large sum of money as compensation for the loss of the consortium of her husband.

The defendants answered the complaint and denied liability. Defense of the case was undertaken by the liability insurance carrier.

Under the statute above cited the intervenor, as the workmen's compensation insurance carrier of Froman's employer, was entitled to notice of the suit and was entitled to intervene therein to assert "a first lien upon two-thirds (2/3) of the net proceeds recovered in [the] action that remain after the payment of the reasonable costs of collection, for the payment to [the carrier] of the amount paid and to be paid by [the carrier] as compensation to the injured employee or his dependents."

The suit was filed on February 8, 1974, and the intervenor was given notice of the filing. On August 29, 1974 the intervenor was granted leave to intervene in the case and filed its intervention claiming its statutory subrogation lien.

The original parties to the suit undertook settlement negotiations, and in view of the presence of workmen's compensation, the negotiations had to be conducted in the light of three ruling decisions of the Supreme Court of Arkansas construing § 81–1340(a) in the context of compromise settlements of tort claims after the filing of suits on those claims in which suits workmen's compensation

---

1. The Honorable Oren Harris, United States District Judge.

2. Jurisdiction of the district court was based on diversity of citizenship and the presence of the requisite amount in controversy. 28 U.S.C. § 1332(a).

carriers had intervened. Those decisions should be mentioned at this point.

In *St. Paul Fire & Marine Ins. Co. v. Wood,* 242 Ark. 879, 416 S.W.2d 322 (1967), the Supreme Court of Arkansas gave a somewhat narrow construction to the term "net proceeds recovered" in a tort action brought by an employee, and limited that term to the proceeds recovered by way of final judgment in such an action. It was held that so long as the subrogation rights of the compensation carrier, established by § 81–1340(b), were not impaired by the settlement, the original parties to the action could settle the case without the consent of, or "around" as it is frequently called, the workmen's compensation carrier, and that the carrier had no lien on the proceeds of the settlement.

Recognizing the potential unfairness of such a procedure to a compensation carrier in a case in which the tortfeasor was of limited means or had no resources other than liability insurance, the Arkansas court held in the later case of *Travelers Ins. Co. v. McCluskey,* 252 Ark. 1045, 483 S.W.2d 179 (1972), that a settlement "around" a compensation carrier must have judicial approval, and that before such approval can be given, the carrier is entitled to notice and to an opportunity to be heard.

However, in the still later case of *Liberty Mut. Ins. Co. v. Billingsley,* 256 Ark. 945, 511 S.W.2d 476 (1974), the court held that a workmen's compensation insurance carrier has no right to veto a settlement which it deems to be disadvantageous or unfair to it, and that in the last analysis the question of whether a proposed settlement is to be approved is addressed to the discretion of the court in which the action is pending subject to appellate review.

The plaintiffs and the defendants first worked out a settlement in which the intervenor would have participated. That agreement contemplated a total settlement figure of $77,500.00, part of which was to be paid in cash and the balance of which was to be evidenced by promissory notes secured by a lien on certain crops grown on Missouri land owned by the defendant Johnson and his wife.

Under the terms of that settlement the intervenor was to be paid $7500.00 in cash and was to receive notes totalling $10,000.00. The plaintiffs were to receive $45,000.00 in cash and $15,000.00 in notes.

That settlement was rejected by the intervenor, and the plaintiffs and defendants then worked out a new agreement, which is the one that the district court approved and which is now before this court for consideration.

The settlement in question does not involve the participation of the intervenor; however, it expressly recognizes that it does not impair the subrogation rights of the intervenor or the right of Mr. Froman to receive further compensation payments from the intervenor. Under the terms of the settlement Mr. and Mrs. Froman are to receive ultimately the sum of $60,000.00 of which sum the liability carrier is to pay $45,000.00 in cash; the remaining $15,000.00 is to be paid, one way or another, by the defendant, Johnson.

Under the terms of that settlement $5,000.00 of liability insurance money would be available to the intervenor for the satisfaction of its subrogation claim and for the balance of that claim, which is much in excess of $5,000.00, the intervenor would have to look to the assets, if any, of the individual defendants.

In resisting approval of the settlement by the district court the intervenor contended that the corporate defendant is insolvent, and that even if the corporation is a mere sham the corporate veil of which should be pierced to reach the assets of Johnson personally, he is either insolvent or his assets are not subject to seizure to satisfy any judgment that the intervenor might obtain against him.[3]

---

**3.** It is not suggested that the defendant Headley, the truck driver, has any funds with which to satisfy a judgment against him.

And the intervenor contended in the district court and contends here that in such circumstances the settlement should not have been approved.

Intervenor argues that the case of Mr. and Mrs. Froman against the defendants is a clear case of liability, and that had it gone to trial the plaintiffs would have obtained a judgment substantially in excess of $50,000.00; that had such a judgment been rendered, the liability carrier would have had to pay its full policy limit of $50,000.00 with respect to which payment the intervenor would have had a statutory lien to the extent of $33,-333.00, whereas if the settlement stands approved, the intervenor will probably not be able to recover more than $5,000.00 in partial satisfaction of its subrogation claim. That argument was clearly put forward when the matter was before the district court.

The record indicates that in approving the settlement the district court was strongly influenced by the holding of the Arkansas Supreme Court in *Liberty Mut. Ins. Co. v. Billingsley, supra.* In that connection the district court found, as was found in *Billingsley,* that the intervenor had not substantially assisted or taken part in the investigation, preparation for trial, or proper evaluation of the lawsuit. And, the district court found ultimately that the settlement was reasonable and that it should be approved.

The district court found that as of March 18, 1975, when the hearing on the proposed settlement was held, the intervenor had already paid benefits to or on account of Mr. Froman amounting to $21,253.33, and it is evident that quite substantial additional payments have been made since that time and will continue to be made.

In those circumstances, and assuming the insolvency of Three Way and Johnson, it seems somewhat unfair to limit the recovery of the intervenor to $5,000.00 in liability insurance money while permitting the Fromans to receive $45,000.00 in cash immediately with at least the possibility of receiving an additional $15,000.00. However, we cannot say that the action of the district court in approving the settlement was clearly erroneous or that it amounted to an abuse of discretion.

It seems that the intervenor had refused to agree to any proposal under the terms of which it would have received substantially less than two-thirds of the amount of the liability insurance. And had the district court refused to approve the settlement, Mr. and Mrs. Froman would have been exposed to the risk of either losing the case upon trial or of recovering judgment in an amount less than the original offer or indeed less than the liability insurance policy limit of $50,000.00.

Counsel for the intervenor assumes that should the case be tried, the plaintiffs would win and would recover a very large judgment which could be collected at least to the extent of $50,-000.00. The difficulty with that assumption is that no one can predict with certainty the outcome of a personal injury trial either with respect to liability or with respect to amount of recovery.

Affirmed.