LIBERTY MUTUAL INSURANCE COMPANY
*v.* James BILLINGSLEY et al

74-62                                          511 S.W. 2d 476

Opinion delivered July 15, 1974

*Wright, Lindsey & Jennings*, for appellant.

*Laser, Sharp, Haley, Young & Boswell, P.A.*, for appellees.

GEORGE ROSE SMITH, Justice. This is a personal injury action based upon products liability, but the appeal presents primarily a question under the workmen's compensation law. Liberty Mutual, the compensation insurance carrier for the plaintiff's employer, asks us to modify or explain two earlier decisions in which we considered the insurance carrier's rights when a compensation claimant seeks to effect a compromise settlement with a third-party tortfeasor. *St. Paul Fire & Marine Ins. Co.* v. *Wood*, 242 Ark. 879, 416 S.W. 2d 322 (1967); *Travelers Ins. Co.* v. *McCluskey*, 252 Ark. 1045, 483 S.W. 2d 179 (1972). Specifically, Liberty Mutual argues that in this case the trial court should not have approved the proposed compromise without requiring the parties thereto to show that the terms of settlement were fair to Liberty Mutual.

The facts are best understood in the light of our two earlier decisions. The workmen's compensation law provides, in broad outline, that an insurance carrier may recoup part or all of its past and future compensation payments by asserting a right of subrogation against the first two thirds of the claimant's recovery from a third party. Ark. Stat. Ann. § 81-1340 (Repl. 1960). In *Wood* we construed subsection (c) of that section to mean that the carrier's right to a lien is ab-

solute only when the claimant's suit is prosecuted to judgment. Hence, we said, the claimant and the tortfeasor can "settle around" the carrier if their settlement preserves the carrier's right to proceed against the tortfeasor. In *McCluskey* we tempered *Wood* by holding that such a compromise settlement must have court or commission approval, after the carrier has been given notice of the proposed settlement and an opportunity to be heard.

Now, the facts in the case at bar: Billingsley, the claimant, was working for Reynolds Metals when he was seriously injured while operating a forklift truck made or sold by one or another of the three defendants. Liberty Mutual, as compensation carrier, began paying medical expenses and temporary total disability benefits. When Billingsley and his wife brought this action against the alleged tortfeasors, Liberty Mutual intervened to assert a subrogatory claim for its past outlays and possible future liability.

The Billingsleys had sued for $900,000. The three defendants eventually offered to settle for $195,000 if the release also extinguished their possible liability to Liberty Mutual. Billingsley rejected that proposal, not wishing to give up any of his rights under the compensation law. The defendants then offered $185,000 to the Billingsleys and $10,000 to Liberty Mutual. Counsel for the Billingsleys, pursuant to *McCluskey*, gave notice to Liberty Mutual that the circuit court's approval of the settlement would be sought.

At the hearing the Billingsley's attorney briefly explained the seriousness of Billingsley's injuries, the possibility that his clients might recover nothing if the case went to trial, and his clients' desire to accept the settlement. In opposition, Liberty Mutual's attorney restated the position his client had taken throughout the negotiations: Liberty Mutual contends that it is entitled to a statutory lien for the full amount of its past and future liability and that the claimant "must make some compelling showing why he should be permitted to settle around the compensation carrier." The circuit court approved the Billingsleys' $185,000 settlement, leaving Liberty Mutual free to pursue its action against the defendants.

For reversal Liberty Mutual again insists that the

burden is on the claimant to make some "compelling showing" to justify his separate settlement with the defendants. There is no such requirement in the statute. Section 81-1340 (c) requires court or commission approval of the settlement, but the statute gives no hint of what considerations should influence those tribunals in reaching their conclusions. We must decline Liberty Mutual's suggestion that we lay down guidelines to govern hearings held pursuant to *McCluskey*. Experience has frequently shown that when a statute is silent upon some point, its interpretation is best developed case by case, when genuinely adversary arguments can be considered against a background of actual facts.

*McCluskey* afforded the carrier an opportunity to be heard, but here Liberty Mutual did not take advantage of that opportunity. It did not show, for example, that it had taken the lead in exploring the facts supporting the claimant's cause of action in products liability. To the contrary, Liberty Mutual apparently doubted the probability of success and devoted hardly any time or money to the investigation. Liberty Mutual showed that prior to the hearing it had paid $14,000 in medical expenses and disability benefits, but it made no effort to estimate its possible future liability. Consequently there is no basis for saying that the defendants' offer of $10,000 to Liberty Mutual was out of line with their offer of $185,000 to the Billingsleys, if such a disproportion be regarded as important. We are unwilling to say either that the statute places the entire burden of proof upon the parties to the independent settlement or that it affords the insurance carrier a veto of any compromise not to its liking (an attitude which is suggested by Liberty Mutual's insistence upon a lien for its entire past and future payments). When we lay aside those two possibilities there is no basis for holding that the circuit court abused its discretion in approving the settlement between the Billingsleys and the defendants.

As a subordinate contention Liberty Mutual argues that its motion in the court below that Judge Means disqualify himself from passing upon the compromise settlement should have been sustained. It was shown that Judge Means had pending an action for an injury to his hand, in which Liberty Mutual was the defendant's liability insurer. Under our con-

stitution and statute those facts do not establish a disqualifying interest in the case at bar. Ark. Const., Art. 7, § 20 (1874); Ark. Stat. Ann. § 22-113 (Repl. 1962); *Ark. State Highway Commn.* v. *Conway Development Corp.*, 244 Ark. 988, 428 S.W. 2d 291 (1968).

Affirmed.

JONES. J., dissents.

J. FRED JONES. Justice. Notwithstanding our decision in *St. Paul Fire & Marine Ins. Co.* v. *Wood*, 242 Ark. 879, 416 S.W. 2d 322, I am still of the opinion that the compensation carrier's statutory lien, when such carrier joins in an action against a third party tort feasor, is "upon two-thirds [2/3] of the net proceeds recovered in such action that remain after the payment of the reasonable costs of collection . . . " as specifically spelled out in Ark. Stat. Ann. § 81-1340 (Repl. 1960).

I am unable to enlarge upon my dissent in *Wood* and my only object in dissent now is to point out that under the interpretations given § 81-1340 (a) and (b) in *St. Paul Fire & Marine Ins. Co.* v. *Wood*, *supra*, as well as *Travelers Ins. Co.* v. *McCluskey*, 252 Ark. 1045, 483 S.W. 2d 179, and now by the majority in the opinion in the case at bar, there is no substance left in subsection (c) of § 81-1340. It appears to me that the requirement in subsection (c) that the "Settlement of such claims under subsections (a) and (b)" have the approval of the court or Commission is a vain and useless provision without substance or reason in the light of the interpretation placed on (a) and (b) by *Wood* and *McCluskey* and now by the majority in the case at bar.

It should really be no concern of the compensation carrier or of the circuit court or Commission whether the injured employee settles his claim against the third tort feasor for $100,000 or $200,000 if the compensation carrier is only left with a separate cause of action against the third party tort feasor for such amount as such carrier is able to obtain, by jury verdict or otherwise, over and above what the injured employee and third party tort feasor can agree the case is

worth for the purpose of their separate settlement in the first place.

I cannot escape the fact that in subrogation cases of this kind the entire amount the compensation carrier is required to pay is brought about and caused by the third party tort feasor. It is my view that the third party tort feasor owes the compensation carrier out of the same pocket or purse it owes the injured employee, and the compensation carrier should share in the statutory two-thirds of the proceeds of a third party settlement regardless of the amount of such settlement.

The effect of the majority opinion, as I see it, is to say to the compensation carrier "you must pay compensation benefits brought about by the negligence of the third party but you are only entitled to recover against the third party such amount as you can obtain after the injured employee gets what he wants and is satisfied."

I agree with the majority that the trial judge did not err in refusing to disqualify this case, but I would at least modify our decisions in *Wood* and *McCluskey*, *supra*.