**COMMERCIAL UNION INSURANCE COMPANY, Plaintiff,**

v.

**SUITT CONSTRUCTION COMPANY, INC. and Crompton Company, Inc., Defendants.**

No. J–C–87–129.

United States District Court,
E.D. Arkansas,
Jonesboro Division.

Nov. 4, 1987.

Paul D. Capps, of Hankins, Capps, Hicks & Madden, North Little Rock, Ark., for plaintiff.

Michael E. Hale, of Barber, McCaskill, Amsler, Jones & Hale, Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is a case in which plaintiff, Commercial Union Insurance Company, seeks to recover workers' compensation benefits which it paid to Wayne Page as a result of injuries which he suffered on the job on September 23, 1983.

At the time of the accident which resulted in the injuries, Page was employed by Swift Construction Company, one of the subcontractors on a construction project on property owned by defendant, Crompton Company, Inc. The other defendant, Suitt Construction Company, Inc., was the general contractor on the job.

Page sustained serious back injuries resulting in almost total paralysis from the neck down when he fell several feet through a hole which had been left in one of the floors on the construction project.

On August 9, 1984, Page sued Suitt and Crompton, claiming that his injuries were a result of the negligence of employees of these two companies. Suit was instituted under the provisions of Ark.Stat.Ann. § 81–1340 (Repl.1976), the third party liability provisions of the Arkansas Workers Compensation Act. Pursuant to the provisions of that section, Commercial Union Insurance Company, the workers' compensation insurance carrier for Page's employer, intervened in the lawsuit seeking recovery of the compensation benefits paid to Page and to establish the lien provided for in Ark.Stat.Ann. § 81–1340 (Repl.1976) upon any recovery

Subsequently, Suitt filed a cross-complaint against the intervenor, alleging that the provisions of the subcontract between Suitt and Swift, Commercial Union's insureds, provided that Swift would obtain a workers' compensation insurance policy which would contain a subrogation waiver in favor of Suitt. It was claimed that Commercial Union, as subrogee of Swift, had no greater rights than Swift and that Swift's agreement to waive subrogation rights is binding on Commercial Union. It was also alleged that Commercial Union had actual knowledge of these provisions of the subcontract at the time that it was entered into.

Some six months after that suit was filed, Suitt filed a motion for summary judgment with respect to the claims made by intervenor, alleging that Commercial Union had no right to recover workers' compensation benefits from it because of the waiver provisions contained in the subcontract. Simultaneously, Suitt filed a motion to file a third party complaint against Swift, Page's employer, seeking indemnity in the event that it was required to pay any sum to Commercial Union.

Page objected to the motion to file the third party complaint. Approximately two months later, and before the late Judge William R. Overton, the judge to whom that matter was then assigned, had ruled on the various matters pending, Commercial Union filed a motion for voluntary nonsuit of its intervention, and for a dismissal of the cross-complaint filed by Suitt. Commercial Union in its motion claimed that the nonsuit and dismissal should be granted to "eliminate unnecessary collateral issues in this case." Both Suitt and Crompton filed a response to the motion, objecting to the voluntary nonsuit and to the dismissal of the cross-complaint.

On June 3, 1986, Judge Overton entered an order which provided, in pertinent part, as follows:

Commercial Union's intervention is based upon its claim for recovery of workers' compensation benefits allegedly paid to

plaintiff. Commercial Union has now filed a motion for voluntary nonsuit of its complaint and for dismissal of defendants' cross-complaint. Defendants have filed a motion to file a third party complaint against Swift Construction Company, the employer of plaintiff and the insured of Commercial Union. All of these motions involve matters between and among defendants, Commercial Union, and plaintiff's employer regarding their respective obligations for workers' compensation coverage and liability. While these issues are related in some respects to the primary issue before the court and, in certain situations could be considered in conjunction with it, it does not appear that under the circumstances of this case it would be appropriate to do so. Because of the factual disputes which apparently exist between the collateral parties concerning the coverage and liability, injecting these issues into the proceedings would unnecessarily confuse and complicate matters for the trier of fact. For that reason, Commercial Union's motion for voluntary nonsuit is granted, as is its motion for dismissal of the cross-complaint filed by defendants. Additionally, defendants' motion to file a third party complaint is denied. These rulings are made without prejudice to the parties to later litigate the issues raised should a judgment against defendants result from the trial of this case.

Because of Judge Overton's serious illness, the Page personal injury action was subsequently reassigned to this court and was tried to an Eastern District of Arkansas, Jonesboro Division, jury which returned a verdict in favor of Page against both of the defendants in the amount of $4,000,000. Judgment was entered on this verdict on August 22, 1986.

While the Page lawsuit was on appeal, the parties settled the case for $3,200,000 and executed a settlement agreement which stated that it was "the written embodiment of the verbal settlement agreement previously made by the parties hereto on December 31, 1986." The agreement provides, among other things, that Page will immediately cause the judgment rendered to be satisfied on the record. It is also obvious from provisions of the settlement agreement that it is an attempt to "settle around" the workers' compensation carrier in the manner permitted by *St. Paul Fire and Marine Ins. Co. v. Wood*, 242 Ark. 879, 416 S.W.2d 322 (1967), and other Arkansas cases following that decision to be discussed in more detail later. In an attempt to accomplish this, the agreement provides:

> The parties hereto also agree that it is their intent to reserve any and all rights, claims or causes of action which Suitt and Crompton have or may have against Swift Construction Company, Commercial Union Insurance Company, and any other person or entity not a party to this agreement arising out of the subject of the above described action and it is also the intent of the parties to reserve all rights Page has to benefits under the Arkansas Workers' Compensation Act. The parties further understand and agree that by this settlement Page is not affecting any rights of Commercial Union Insurance Company under Ark.Stat. Ann. § 81–1340 *et seq.*

The parties requested and were granted an "approval hearing" which seems to be required by the case of *Travelers Insurance Company v. McCluskey*, 252 Ark. 1045, 483 S.W.2d 179 (1972).[1] On February 19, 1987, the court held the hearing at which attorneys for Page, Suitt, Crompton and Commercial Union appeared. At that

---

1. Although this did not occur to the court prior to the time that it began the research to prepare this opinion, it is not now at all clear to the court that such a hearing was necessary or required. *McCluskey, supra,* as will be discussed below, was a somewhat belated holding by the Arkansas Supreme Court that, henceforth, the court would consider subparagraph (c) of Ark.Stat.Ann. § 81–1340 to be applicable

to "any compromise settlement of a tort claim." *McCluskey, supra,* 252 Ark. at 1052, 483 S.W.2d 179. It is at least arguable that this settlement was not the settlement of a tort claim within the provisions of that statute but, instead, is a compromise and settlement of a judgment that had previously been rendered. Since that is true, it may be that, technically, such a hearing was not required.

hearing defendants' attorneys again, in effect, objected to the cause of action being split. In that respect, the following colloquy occurred:

MR. HALE: Your Honor, I want the record to be clear that Suitt Construction Company and Crompton do not feel that Commercial Union has a subrogation right at this time. The record will reflect that Commercial Union intervened in the lawsuit and subsequent to intervening voluntarily wanted to be dismissed. We objected on behalf of both Suitt and Crompton. And the Court granted Commercial Union's motion to voluntarily withdraw and I'd like the record to reflect that if subrogation cause of action is brought against us, we would object as pleading the cause of action.

THE COURT: I understand that, that's something that some judge will have to cross that bridge when that comes up, I suppose.

On the day of the hearing the court executed an order provided by the attorney for Page approving the settlement and finding, among other things, that:

IT IS FURTHER CONSIDERED, ORDERED AND ADJUDGED that this settlement does not extinguish any rights Wayne Page has to benefits under the Arkansas Workers' Compensation Act and said rights are specifically reserved. The right of Commercial Union Insurance Company to pursue whatever rights that may exist, if any, with respect to subrogation claims pursuant to Ark.Stat. Ann. 81–1340, *et seq.* is not affected by this settlement.

Subsequent to the settlement hearing and the satisfaction and release of the judgment entered in that case, Commercial Union brought this action against Suitt and Crompton, claiming that it should recover from those companies all sums that it has paid to Wayne Page as a result of its providing workers' compensation coverage to his employer. Defendants answered and counterclaimed, asserting that the agreement by Page's employer (Swift) allegedly waiving its workers' compensation subrogation rights against Suitt is binding upon Commercial Union. Both parties filed motions for summary judgment and they seem to agree that the facts necessary for a determination of the issues presented are not in dispute. The court believes that the above represents a fair summary of those facts.

To determine the issues presented it is necessary to trace what this writer respectfully and humbly, but strongly believes is the tortured and tortuous route of section 40 of the Arkansas Workmen's Compensation Act (Ark.Stat.Ann. § 81–1340 (Repl. 1976)) through the courts of Arkansas.

These provisions of the Act appear, before one reads the Arkansas cases interpreting them, to be rather clear and unambiguous. The section is broken down into three subparagraphs. Subparagraph (a) seems to say, rather clearly, that the making of a claim for compensation against the employer or its carrier as a result of an on-the-job injury shall not affect the right of an employee or his dependents to make claim or maintain an action in court against a third party allegedly causing the injury. This subparagraph says that if such a claim is made or action is instituted, the employer or its carrier shall be entitled to reasonable notice and an opportunity to join in the action. According to this subparagraph, if the employer or its carrier joins in the action he is entitled to a first lien upon two-thirds of the net proceeds recovered after payment of reasonable costs of collection. The subparagraph says that the commencement of an action by an employee against such third party "or the adjustment of any such claim" shall not affect the rights of the injured employee or his dependents to recover compensation

but any amount recovered by the injured employee or his dependents from a third party shall be applied as follows: Reasonable costs of collection shall be deducted; then one-third [⅓] of the remainder shall, in every case, belong to the injured employee or his dependents, as the case may be; the remainder, or so much thereof as is necessary to discharge the actual amount of the liability of the employer and the carrier; and any

excess shall belong to the injured employee or his dependents.

Ark.Stat.Ann. § 81–1340(a)(2) (Repl.1976).

Thus, it appears to this court that any fair reading of that provision of the law should cause the reader to conclude that the Arkansas Legislature has provided that, even though an employee draws workers' compensation benefits, he is not precluded from making a separate claim or maintaining a separate cause of action against the third party causing the injuries. If the workers' compensation carrier or the employer desires to have a lien on any recovery made by the employee, an intervention must be filed. However, it seems to this court that the statute provides that, even if the employer or carrier does not intervene, any recovery made by the employee still belongs (that is what the statute says), after payment of reasonable costs of collection, one-third to the employee and two-thirds to the employer or the employer's carrier. It seems that intervention is required only if the employer or carrier desires to make certain that the employee doesn't recover a sum from the third party and not remit to the employer or carrier the share belonging to them. In other words, it seems that the legislature said, in this court's view in rather clear terms, that any recovery made by an employee would belong one-third to the employee and two-thirds to the employer or its carrier. If the carrier wanted to make certain that its interest was protected, it could join in the action and thereby perfect a lien on the recovery.

After having rather unequivocally made this division in subparagraph (a) of this section, the legislature obviously recognized that there might be cases where the employee, for one reason or another, would decide not to pursue a claim against a third party tortfeasor. In that event, the legislature provided in subsection (b) that the employer or its carrier would be subrogated to the employee's rights and could maintain an action against the third party responsible for the injury or death. In that event, after the compensation beneficiary had received reasonable notice and an opportunity to be represented in such action,

the liability of the third party would be determined. Again, just as in subparagraph (a), the legislature provided that, in the event of such a recovery, costs of collection including a reasonable attorney's fee would be first deducted, and the balance distributed one-third to the employee and two-thirds to the employer or its carrier.

Subsection (c) simply provides that the settlement of any claim made under the provisions of subsections (a) or (b) must have the approval of a court or the workers' compensation commission. This was obviously done to protect the compensation beneficiary, and thus the public, from the compensation beneficiary settling his claim for an inadequate amount.

As indicated, the court believes that that is what the statute clearly and unambiguously says. Then came *St. Paul Fire and Marine Ins. Co. v. Wood*, 242 Ark. 879, 416 S.W.2d 322 (1967), and, as a result of that case and others after it, as every lawyer who has ever practiced in this area of the law knows, that is not what the Arkansas Supreme Court says that the statute provides. As Justice J. Fred Jones pointed out in his dissent, joined in by two other judges on this seven-judge court, the interpretation set forth above seems to have been the interpretation of the Arkansas Supreme Court until this decision. *See* dissenting opinion of Justice Jones and the cases cited therein, 242 Ark. at 899, 416 S.W.2d 322.

This court respectfully submits that the decision reached by a bare majority in this case is an exemplification of the old adage that hard cases make bad law, and the majority failed to heed Justice Jones' admonition that: "But, we are confronted with a matter of law in this case, and the law was not designed to fit this case alone." *Id.*

In that case, employee Wood was severely injured while employed as a truck driver when a hydraulically operated auger on his truck came into contact with a high voltage line maintained by an electric cooperative. Justice Conley Byrd, writing for the majority, described the injuries as follows: "As a

result of the injury, Wood was horribly and terribly burned, shocked, and injured; both feet have been amputated; and a hole was burned in his skull, with undetermined effects on his mind." Suit was filed against the electric cooperative, and settlement negotiations ensued which resulted in an offer to Wood of $78,000.00. The workers' compensation carrier, St. Paul, had paid $26,116.68 in compensation benefits and estimated that its total expenditures would reach $50,000.00. It insisted upon receiving two-thirds, after payment of litigation costs and counsel's fees, of any amount paid to Wood.

When an agreement could not be reached with the compensation carrier, it was determined that Wood and the electric cooperative, and its insurance carrier would attempt to "settle around" the worker's compensation carrier. An escrow agent was paid $78,000.00, to be delivered by it to Wood when directed by Wood's attorney. Upon delivery of the sum held in escrow, a release, also placed in escrow, would be delivered to the electric cooperative. The agreement also provided that First Electric recognized St. Paul's right to pursue "its own statutory cause of action against First Electric as provided by law...." *Id.* at 883, 416 S.W.2d 322.

The matter ultimately made its way to the Arkansas Supreme Court, and the compensation carrier quite naturally contended that it was entitled to two-thirds of the amount paid to Wood after deducting reasonable costs of collection. In an opinion written by Justice Byrd, joined in by three other justices, the court read section 40 so as to authorize the settlement. What the court did, in this court's view, and in the view of three dissenting judges in that case, is to read the word "recovered" used in that statute in an unbelievably technical sense. The majority appears to have assumed that the Arkansas Legislature, when the act was written, had a Black's Law Dictionary at hand and when the court used "recovered" and "recovery" several times in section 40, it intended those words to mean a "restoration or vindication of a right existing in a person, by the formal judgment or decree of a competent court,

at his instance and suit...." *Id.* at 887, 416 S.W.2d 322.

Its reasoning was that since the legislature meant to use those words in this technical sense, subparagraphs (a) and (b) of section 40, which seem to divide any collection made from a third party one-third to the employee and two-thirds to the employer or its carrier, did not apply to a settlement, since a settlement does not result from a "formal judgment or decree of a competent court." Thus, according to the court, the employee was perfectly free to settle his claim for any amount desired, leaving the workers' compensation carrier to pursue its separate claim against the third party.

In this respect, the court said:

Thus there is but one cause of action. In this situation, can we hold that the rule against splitting a cause of action prohibits the compromise settlement here proposed by Wood and First Electric? The answer is that the rule against splitting a cause of action is for the benefit of the defendant to protect him against a multiplicity of suits, and in this instance First Electric and its insurance carrier have specifically agreed to a splitting of the cause of action between St. Paul and Wood.

*Id.* at 889, 416 S.W.2d 322.

The court went on to say that:

Under the terms of the proposed compromise, St. Paul has all of the right of subrogation against First Electric that was given to it by law and that it would have had if Wood had taken no action whatsoever.

*Id.*

This view of the court was emphasized by a separate concurring opinion of Justice George Rose Smith in which he said:

On the other hand, St. Paul stands, after the settlement, exactly as it did before the settlement. That is, it is free to sue the Coop in Wood's name, so that as far as the jury is concerned the case will ostensibly be a genuine lawsuit brought by Wood.

*Id.* at 890, 416 S.W.2d 322.

The statement by Justice Smith that the action can be maintained in the name of the

insured does not seem to be supported by the law of any jurisdiction, except where specifically provided by statute, including the law of Arkansas as announced by the Arkansas Supreme Court. *McGeorge Contracting Co. v. Mizell*, 216 Ark. 509, 226 S.W.2d 566 (1950); 44 Am.Jur.2d *Insurance* § 1826; 13 A.L.R.3d 140; 6 Wright & Miller, *Federal Practice and Procedure: Civil* § 1546 (1971); and 2A *Larson's Workmen's Compensation Law* § 74.41(b) (1982). In fact, since that time the Arkansas Supreme Court, while not specifically passing on this question, has seemed to indicate that there may be some doubt about the validity of Justice Smith's observation. In *Travelers Ins. Co. v. McCluskey*, 252 Ark. 1045, 483 S.W.2d 179 (1972), the court said:

> Still, says appellant, the employee should not be able to settle and leave the compensation carrier out in the cold. We are unwilling to accept the premise that an insurance carrier cannot recover in a proper case, even if we should eventually hold, as we have not, that such a carrier must prosecute in its own name its subrogation claim for benefits paid and those ultimately to be paid because of our real party in interest statute....

*Id.* at 1050, 483 S.W.2d 179.

This court does not feel that it would serve a useful purpose to delineate in any further detail the succession of cases which followed *Wood, supra.* For anyone further interested in this subject, they are *Jackson Cookie Co. v. Fausett*, 17 Ark. App. 76, 703 S.W.2d 468 (1986); *New Hampshire Ins. Co. v. Keller*, 3 Ark.App. 81, 622 S.W.2d 198 (1981); *Bituminous Ins. Co. v. Georgia Pacific Corp.*, 2 Ark. App. 245, 620 S.W.2d 304 (1981); *U.S. Fidelity and Guaranty Co. v. Glass*, 261 Ark. 45, 545 S.W.2d 924 (1977); *Liberty Mutual Ins. Co. v. Billingsley*, 256 Ark. 947, 511 S.W.2d 476 (1974); and *Travelers Ins. Co. v. McCluskey*, 252 Ark. 1045, 483 S.W.2d 179 (1972). A mere reading of these cases, in the court's view, shows the problems that the *Wood* case has caused the court and abundantly shows the wisdom of Justice Jones' admonition that the court should not forget that its holding

in that case would not settle only that case but would have a substantial effect in the future.

The court believes that what the holdings of all of these cases boil down to is that the law in Arkansas now is that an injured employee may pursue his claim against a third party tortfeasor who causes injuries and, irrespective of what the compensation carrier does, he may "settle around the carrier," leaving the carrier to pursue its claim, if it is foolish enough to do so, against the third party tortfeasor, probably in the name of the insurance carrier if the law of this state and most other jurisdictions is followed. Because of the court's holding in *McCluskey, supra*, the employee must give the compensation carrier notice and an opportunity to be heard in relation to the settlement, but that appears to be a right without a remedy. The Arkansas Supreme Court declined and refused, although invited, to give courts any direction whatsoever in respect to what criteria trial courts are to use in deciding whether to approve the settlement. In *Liberty Mutual Ins. Co. v. Billingsley, supra*, the court said that the compensation carrier shall not have a veto power over the settlement and holds that little if any burden is placed upon the employee to show that the settlement is fair to the carrier and states:

> We must decline Liberty Mutual's suggestion that we lay down guidelines to govern hearings held pursuant to *McCluskey*. Experience has frequently shown that when a statute is silent upon some point, its interpretation is best developed case by case, when genuinely adverse arguments can be considered against a background of actual facts.

*Liberty Mutual Ins. Co. v. Billingsley*, 256 Ark. at 950, 511 S.W.2d 476.

This court knows, both from having had a number of these matters before it in the last six years, and because of this writer's experience in handling matters such as this as an attorney, that few if any trial courts have the slightest notion about what, if anything, they can do to protect the carrier's rights at such a hearing. It is obviously always, or almost always, in the interest

of the employee to be able to settle with the third party tortfeasor without having to face the problem that the carrier, under the law, is also entitled to reimbursement if the third party was, in fact, the cause of the injuries and subsequent payment of compensation benefits. In other words, it would invariably be easier for the employee to reach a settlement if the third party does not have to consider the amount owed to the compensation carrier, especially in view of the uncertainty and problems which anyone but the most naive must recognize are inherent in an insurance company being required to pursue a separate lawsuit after the injured employee has settled his claim and dismissed his cause of action.

As indicated above, the Arkansas Supreme Court has said, more than once, that the procedure that it has authorized does not prejudice in any way the right of the compensation carrier to pursue its claim to a conclusion before the jury. In *New Hampshire Ins. Co. v. Keller, supra,* the Arkansas Court of Appeals said:

> The agreement entered into by Keller and the tortfeasors, and approved by the court, did not prejudice in any way the right of the appellant to pursue its claim against the tort-feasor.

3 Ark.App. at 88, 622 S.W.2d 198.

This court simply does not believe that such statements are supported by common sense. To exemplify this, let's look at what occurred in *Travelers v. McCluskey, supra.* In that case, the workers' compensation carrier did not actually intervene in the lawsuit because the attorney for the carrier seemed to believe that he had an agreement with the employee's counsel that the compensation carrier's rights would be protected. Trial of that case began and, because of difficulties that occurred during the trial, the employee and the third party tortfeasor settled around the carrier. Let's assume that, rather than rely upon plaintiff's counsel to protect its interest, the carrier had intervened in that suit. The jury had been selected, the trial had begun, and the settlement was then reached. One week after the opinion was delivered in *McCluskey,* the court decided *Amos v.*

*Stroud,* 252 Ark. 1100, 482 S.W.2d 592 (1972), and held that the jury may not be told that the workers' compensation carrier is a party to the lawsuit, and the carrier may not participate in any way in the trial. Thus, when the settlement was reached, what was the carrier and the trial court to do? The jury had heard at least part of the evidence and did not have the slightest inkling that there was any interest being tried other than that of the employee. The employee settled his claim and had no further claim to present to anyone. At that point, who was the real party in interest? Even if it is assumed that the carrier should be permitted to continue the trial, how was that to be done? What was the trial court to do? Was it to then allow, in the middle of the trial, the carrier to make an opening statement and to advise the jury that it, all along, had had an interest in this case? Is it then allowed to put evidence before the jury and, if so, in whose name and by which lawyer? If a juror is even reasonably aware of his surroundings, he will at least wonder what is going on if, all of a sudden, the counsel for the carrier who had not been permitted to participate in the trial starts participating. If he is allowed to participate, what evidence is the jury entitled to hear? Is it to be allowed to consider the entire case even though the trial court and the lawyers know, although the jury may or may not, that the employee has settled his entire claim and no longer has any dispute with the third party tortfeasor? This did not occur in *McCluskey* only because counsel for the workers' compensation carrier claimed to believe that his rights were being protected by plaintiff's lawyer, but some day this will occur.

Even in those cases where a settlement is reached prior to a lawsuit being filed, it is naive to believe, in this court's view, that the insurance carrier's claim has not been prejudiced. This court knows of no case in which the carrier has pursued its claim against a third party tortfeasor after a settlement has been made around it, and there appear to be no reported cases where this occurred. As indicated, it does not appear that a carrier should be allowed to

pursue the claim in the name of the employee who no longer has any interest in the matter if the law of Arkansas and most other jurisdictions is followed.

For these reasons, it is never in the interest of an insurance carrier for a court to allow a settlement to be made around it. Thus, since it is obviously true that the interests of the employee and that of the worker's compensation carrier are conflicting, in this court's view, there is no way that the hearing required by *McCluskey* means anything. What can the court do? It can find that the settlement is in the best interest of the employee, as trial courts invariably do, but, by doing that, it is automatically placing the workers' compensation carrier in an untenable position and, thus, such settlement is not in its best interest.

Be that as it may: "Even if, by the lights of the federal court or the courts of other states, a rule of law as announced by a state's highest court is anomalous, antiquated, or simply unwise, it must be followed unless there are very persuasive grounds for believing that the state's highest court no longer would adhere to it." 19 Wright, Miller & Cooper, *Federal Practice and Procedure: Civil* § 4507 at 91 (1982). Since that is true, in this case, the court is convinced that Commercial Union may not recover in a separate lawsuit against Suitt and Crompton because, to allow such a suit, the rule against allowing the splitting of causes of action would be violated. The court believes that the law in Arkansas is that an employee and a third party tortfeasor may settle the employee's claim and putatively leave the workers' compensation carrier to pursue its claim separately if it desires, at least so long as the settlement is made prior to judgment. As indicated, the Arkansas Supreme Court has said that to allow such does not violate the rule against splitting of causes of action because the third party for whose benefit the rule was designed has agreed to it. The law in Arkansas has long been that, where there is only one tort committed, there is but one cause of action which may not be split. *Motors Insurance Corp. v. Coker*, 218 Ark. 653, 238 S.W.2d 491 (1951). In *U.S.*

*Fidelity and Guaranty Co. v. Glass*, 261 Ark. 45, 545 S.W.2d 924 (1977), the court said:

> Although the workmen's compensation carrier and the beneficiary have separate rights to institute an action against a third party tortfeasor, there is only one cause of action and it cannot be split without the defendant's consent.

*Id.* at 46, 545 S.W.2d 924. Citing *Amos v. Stroud*, 252 Ark. 1100, 482 S.W.2d 592 (1972), and *Winfrey & Carlile v. Nickles*, 223 Ark. 894, 270 S.W.2d 923 (1954).

Since that is the case, even though *Wood, supra*, and the other Arkansas cases say that the compensation carrier has a cause of action which may be pursued separately, the law clearly is that that is true only when the tortfeasor has agreed to the splitting. However, as the Arkansas court has said more than once, even under these circumstances there is but one cause of action. Since that is true, in this case that one cause of action was litigated to a conclusion when a jury verdict was reached and a judgment entered on the jury verdict. At that point, the one cause of action had been litigated to a conclusion, and no longer existed. A judgment was entered, and the settlement was merely a settlement of that judgment. Any attempt to leave Commercial Union to pursue its separate cause of action is of no avail. There is nothing left for it to pursue. When it voluntarily dismissed its intervention in the Page lawsuit, it allowed its claim, intertwined inseparably with Page's claim, to be terminated. Suitt and Crompton, at the time of the dismissal of the intervention, objected to it, and unlike the situation in *Wood, supra*, and the subsequent cases, no one can say that the third party tortfeasors agreed to the splitting of Commercial Union's cause of action from the one litigated to a conclusion and terminated by judgment. When the Page matter was tried, and when the jury verdict was returned, the whole claim was tried and determined. The jury was not instructed that it was to return a verdict only for Page's claim, leaving intact Commercial Union's. Instead, the $4,000,000 jury verdict was intended to be recovery for the one cause of action—the entire claim. At that point, the lawsuit was over,

and Commercial Union's "cause of action" could not be revived and reinstated simply because some of the parties said that it was.

Of course, the law in every jurisdiction is that, when a cause of action is reduced to judgment, the cause of action merges into the judgment. This has long been the law in this country. In *Schuler v. Israel*, 120 U.S. 506, 7 S.Ct. 648, 30 L.Ed. 707 (1887), the United States Supreme Court said:

> [A] full and complete judgment on the whole cause of action ... may be pleaded as a defense.... [W]hen the matter is pleaded in due time and it is made to appear that a judgment on the same cause of action has been recovered and is in full force and effect, that judgment must be held to merge the evidence of the debt.

*Id.* at 509, 7 S.Ct. at 649.

In words that are particularly appropriate to this case, Professor Wright in 18 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 4402 at 8 (1981), said:

> Foreclosure of matters that never have been litigated has traditionally been expressed by stating that a single "cause of action" cannot be "split" by advancing one part in a first suit and reserving some other part for a later suit. The entire cause of action was said to "merge" in a judgment for the plaintiff, leaving a new cause of action on the judgment, or to be subject to the "bar" of a judgment for the defendant.

The Arkansas Supreme Court has said that there is but one cause of action which may not be split except under circumstances described in those cases. Those cases require, among other things, that the third party tortfeasor agree to the splitting be-

fore such a split can be made. There is no such agreement in this case and, in fact, the defendants objected at every opportunity. When the judgment was entered, compromised, and satisfied, there was nothing left of the compensation carrier's claim, so the court must, somewhat reluctantly, conclude that the motion for summary judgment filed by Suitt and Crompton must be granted.

Because of the Arkansas Supreme Court's interpretation of section 40 of the Arkansas Workers' Compensation Act, Commercial Union is "left out in the cold," [2] but this court has no choice but to follow the law announced in those decisions irrespective of its feeling about the soundness of the reasoning used in those decisions.

Plaintiff's motion for summary judgment filed herein will be denied, and the motion of Suitt and Crompton will be granted by separate order.

2. It might be argued that Commercial Union is entitled to a judgment against Suitt and Crompton in the Page lawsuit for an amount equal to their compensation payments, not to exceed $800,000. This argument could be based upon the fact that the entire claim was litigated to a conclusion and a judgment of $4,000,000 returned. Presumably, since there is only one cause of action, the $4,000,000 verdict was for the entire cause of action. The verdict resulted in a judgment in that amount. It might be argued that, when Page and Suitt and Crompton agreed that Page would be paid $3,200,000 for his part of the judgment and specifically stipulated that "the parties further understand and agree that by this settlement Page is not affecting any rights of Commercial Union Insurance Company under Ark.Stat.Ann. § 81-1340 *et seq.*," they recognized, whether they knew it or not, that Commercial Union was entitled to the balance of the jury verdict. However, it is not now necessary for the court to face that question since it has not been presented to it for consideration.