David A. SIMPSON and Karen
L. Simpson, Plaintiffs,

v.

**LIBERTY MUTUAL INSURANCE
COMPANY, Defendant.**

Civ. No. 92–5104.

United States District Court,
W.D. Arkansas,
Fayetteville Division.

March 16, 1993.

Laura J. McKinnon, N. Michael Yarbrough, Fayetteville, AR, for plaintiffs.

William Griffin, David D. Wilson, Friday, Eldredge & Clark, Little Rock, AR, for defendant.

## MEMORANDUM OPINION

H. FRANKLIN WATERS, Chief Judge.

This is a declaratory judgment action filed under the provisions of 28 U.S.C. § 2201 by David A. Simpson and Karen L. Simpson, Arkansas citizens, against Liberty Mutual Insurance Company, a Massachusetts corporation. The court has jurisdiction pursuant to that statute and 28 U.S.C. § 1332.

On January 29, 1988, plaintiffs were employed as truck drivers operating a tractor-trailer rig near the City of Lee, Massachusetts. In the early morning hours on that date the vehicle they were operating was involved in an accident with another large tractor-trailer vehicle and plaintiffs sustained injuries. Because the accident was work-related, Liberty Mutual Insurance Company, the worker's compensation insurance carrier for plaintiffs' employer paid to Karen Simpson total worker's compensation benefits of $47,801.25 and to David Simpson total benefits of $19,610.61.

In April of 1990 the Simpson's brought suit against the driver of the other vehicle in-

volved in the accident, and his employer in state court in Barrington, Massachusetts. As it turned out, Liberty Mutual Insurance Company also was the insurance carrier for the defendant in that lawsuit and it retained Massachusetts counsel to defend the action.

In early 1992 a bench trial commenced in the Massachusetts state trial court and after the trial, before a decision was issued by the court, settlement negotiations took place between the attorneys for the parties. It appears that all parties participating in the settlement negotiations were fully aware that Liberty Mutual also had a worker's compensation claim on any potential recovery by the plaintiffs since the settlement negotiations attempted to take that into account in arriving at the amount of the settlement. In fact, it appears that, during the settlement negotiations, an attempt was made to get the Arkansas representative of Liberty Mutual to reduce the subrogation claim. Although it appears that all of this is undisputed, there is a great deal of dispute about the implications of such negotiations and discussions.

In any event, after extensive discussions and negotiations, the parties agreed to settle the Massachusetts litigation for a total of $225,000.00. On March 6, 1992, in a letter from the Massachusetts attorney for the plaintiffs, the Massachusetts trial court was notified that the case had been settled.

Apparently because Liberty Mutual became concerned about whether its subrogation rights resulting from payment of the worker's compensation benefits in Arkansas were being adequately protected in the settlement, progress toward actual termination of the Massachusetts lawsuit became stalled. In early May, 1992, plaintiffs' counsel filed a motion with the court seeking an order compelling the execution and filing of the stipulation of dismissal. Then on approximately May 26, 1992, plaintiffs' counsel filed a motion for approval of the settlement and on May 29, 1992, a stipulation of dismissal signed by all counsel of record, including counsel for defendants in that case was filed and the case was dismissed.

Apparently as a result of the agreement between counsel which resulted in the stipulation of dismissal, settlement checks were thereafter issued and delivered to plaintiffs as follows:

| | |
|---|---|
| David A. Simpson, Karen L. Simpson and their attorneys | $ 42,889.39 |
| Karen L. Simpson and Liberty Mutual Insurance Company and the attorneys for Ms. Simpson | $ 47,801.25 |
| David A. Simpson and Liberty Mutual Insurance Company and the attorneys for Mr. Simpson | $ 19,610.61 |
| Karen L. Simpson and her attorneys | $114,698.75 |

Although there is a great deal of dispute among the parties as to what the agreement, if any, was, it is apparent that the two checks which included Liberty Mutual as a payee are for the exact amount of the worker's compensation benefits in dispute. Although, as already indicated, there is dispute about the reasons for and the implications of these two checks being issued so as to include Liberty Mutual as a payee, it is apparently not disputed that the parties agreed that that would be done as part of an agreement to terminate the Massachusetts action. In fact, it is apparent that it was the intention of the plaintiffs at that time to file a declaratory judgment action in Arkansas to resolve this issue, since in paragraph 5 of the motion to compel execution and filing of the stipulation of dismissal it is stated that: "In order to obtain a release from the $70,000 lien held by the Worker's Compensation Carrier on this case, the plaintiffs anticipate moving in an Arkansas Court a Declaratory Judgment (sic) that the compensation carrier's lien is unperfected. Plaintiffs cannot initiate that proceeding until this case has been dismissed."

On July 28, 1992, approximately two months after the stipulation of dismissal was filed, Liberty Mutual, acting through counsel other than counsel retained to defend the Massachusetts litigation, filed a motion to intervene in that case and the motion contains a notation, apparently signed by the judge dated August 21, 1992, indicating that the motion was denied because the case had been resolved. It appears to be undisputed that Liberty Mutual did not, while the Massachusetts action was pending, intervene in that case.

■ In this declaratory judgment action the plaintiffs contend that by failing to intervene, Liberty Mutual has waived any lien

created by § 40 of the Arkansas Worker's Compensation Act (Ark.Code Ann. § 11–9–410 (1987)) citing *Travelers Ins. Co. v. McCluskey*, 252 Ark. 1045, 483 S.W.2d 179 (1972) and *Jackson Cookie Co. v. Fausett*, 17 Ark.App. 76, 703 S.W.2d 468 (1986). Plaintiffs pray that Liberty Mutual be "enjoined from asserting, collecting, or attempting to assert or collect an asserted lien upon said third-party tort settlement proceeds."

Liberty Mutual filed a motion for summary judgment, and plaintiffs responded and filed their cross motion for summary judgment. Thus, the issue before the court is to whom the amounts represented by the disputed checks belong, Liberty Mutual or the plaintiffs.

Defendant contends that Massachusetts law should be applied in resolving this issue, and plaintiffs, of course, dispute that. The reason is that there appears to be no argument but that the insurance carrier is entitled to the proceeds of the two checks in dispute if Massachusetts law is applied. The applicable statute provides:

> Where the injury for which compensation is payable was caused under circumstances creating a legal liability to some person other than the insured to pay damages in respect thereof, the employee shall be entitled, without election, to the compensation and other benefits provided under this chapter. Either the employee or insurer may proceed to enforce the liability of such person, .... The sum recovered shall be for the benefit of the insurer, unless such sum is greater than that paid by it to the employee, in which the event the excess shall be retained by or paid to the employee.

Mass. Gen.Laws Ann. ch. 152 § 15 (West 1993). Massachusetts courts have applied their statute as it was written and it has not endured the tortured and tortuous route through the courts that § 40 of the Arkansas Worker's Compensation Act has endured beginning with *St. Paul Fire & Marine Ins. Co. v. Wood*, 242 Ark. 879, 416 S.W.2d 322 (1967), and continuing in numerous cases attempting to carry into effect the holding in *Wood*.[1]

Since the accident and the litigation which resulted in the settlement which caused the checks in dispute to be issued occurred in Massachusetts and, since, although the worker's compensation benefit for which Liberty Mutual claims a right to reimbursement were paid as a result of insurance provided to an Arkansas employer, the purported settlement hearing required by both Arkansas law and Massachusetts law was held in Massachusetts, there is, in the court's view, a very difficult issue presented as to which law should be applied to resolve the issue before the court. However, the court believes that it is not necessary to decide the issue of whether Massachusetts or Arkansas law should be applied to this dispute since the court has concluded, after careful analysis of the Arkansas statute and applicable Arkansas law, that it will not make a difference which law applies. As already indicated, it is clear that if Massachusetts law is applied, then Liberty Mutual has a right to the funds represented by the checks in dispute, and there does not appear to be a contention by the plaintiffs otherwise.

However, plaintiffs, through their counsel, strongly and sometimes stridently insist that, if Arkansas law is properly applied, then Liberty Mutual has waived or lost any right that it had to be reimbursed for worker's compensation benefits paid because it failed to properly intervene in the Massachusetts action.

As is already indicated, it appears that there is at least some indication in the file, and perhaps a good deal of indication, that Liberty Mutual appearing as a payee on these checks was a result of a settlement to get the Massachusetts case dismissed so that plaintiffs could pursue their contention in Arkansas courts. Be that as it may, this court, after careful consideration, believes that plaintiffs, in making the contention that they make, misunderstand the difference between "debt" and a "lien" securing that "debt." They seem to believe and argue that, if one does not have a "lien" and does not take the proper steps to acquire one, it

1. For a complete discussion of that issue, see this court's opinion in *Commercial Union Ins. Co. v. Suitt Const. Co., Inc.*, 673 F.Supp. 320 (E.D. Ark.1987), *aff'd without op.* 860 F.2d 1087 (8th Cir.1988).

follows that they also do not have a "debt" under the law. That is simply not the law in any jurisdiction, even in Arkansas, and even when the admittedly uncertain worker's compensation law, as construed by the Arkansas courts, is applied.

The literal definition of "lien" is a "band, tie, bond" (Webster's Third New International Dictionary (1981)). As stated in 51 Am. Jur.2d *Liens* § 1 (1970):

> Although the term has been variously defined, in its most general significance a lien is recognized to be a charge upon property, either real or personal, for the payment or discharge of a particular debt or duty in priority to the general debts or duties of the owner; an encumbrance upon property as security for the payment of a debt; or a hold or claim on another's property as security for the payment or performance of a debt, duty or other obligation.

*Id.* (footnotes omitted).

■ Thus, it is clear that before one can have a "lien" one must have a "debt", but that does not mean that one must have a "lien" in order to have a "debt." He may have a "debt" and it is simply unsecured because he did not do whatever necessary to obtain a "lien." Thus, it is entirely possible under the facts of this case for Liberty Mutual to have a right to recover the worker's compensation benefits paid to plaintiffs by it although it did not do those things necessary to secure that "debt." It may be that the debt is there but that there simply is no "band, tie, or bond" tying it to any security.

■ Section 40 of the Arkansas Worker's Compensation Act provides that, even though an employee draws worker's compensation benefits, he is not precluded from making a separate claim or maintaining a separate cause of action against a third party causing the injuries. This section provides two methods for pursuing such claim or cause of action. Ark.Code Ann. § 11-9-410(a)(2) (1987) provides that the employee may make the claim or pursue the action but that any amount recovered by the injured employee shall belong, after reasonable costs of collection are deducted, one-third to the injured employee, and the remainder, "or so much as is necessary to discharge the actual amount of the liability of the employer and

the carrier" shall belong to the employer or carrier. Then, subsection (b) of that section provides the carrier with a subrogation right and provides that, where the employee does not pursue the claim or cause of action the employer or carrier may do so, but, again, any recovery shall belong, one-third to the employee and the remainder, or so much as is necessary to reimburse the carrier for the amount paid, to the carrier. Ark.Code Ann. § 11-9-410(a)(2), (b) (1987). In other words, the employee may pursue the claim and make a recovery or, if he chooses not to do so, the employer or carrier may do so but, in either event, the employee is to receive at least one-third of the amount received calculated after payment of costs of collection, and the employer or carrier, if there is enough remaining, is to be reimbursed for the worker's compensation benefits paid.

That is clearly what the Arkansas statute says, and no decision of the Arkansas Supreme Court says otherwise. It should be pointed out that there is not any contention that there was any attempt to "settle around" the worker's compensation carrier. It is clear from the releases executed by the plaintiffs that the plaintiffs "hereby release and discharge the said Liberty Mutual, Richard Kochanowski, and Recycling Enterprises, Inc. from any and all claims, demands, actions, and causes of action of every name and nature" arising out of the accident in question. Thus, this is not a case like *Wood* and its progeny where the employee purported to "split" the cause of action and settle only his portion of the cause of action—plaintiffs in this case settled the whole thing, their claim or cause of action and Liberty Mutual's claim or cause of action.

It should be remembered that the Arkansas Supreme Court has repeatedly said that:

> Although the workmen's compensation carrier and the beneficiary have separate rights to institute an action against a third party tortfeasor, there is only one cause of action and it cannot be split without the defendant's consent.

*United States Fidelity and Guaranty Co. v. Glass,* 261 Ark. 45, 46, 545 S.W.2d 924 (1977), *citing Amos v. Stroud,* 252 Ark. 1100, 482 S.W.2d 592 (1972), and *Winfrey & Carlile v.*

**1352**

*Nickles,* 223 Ark. 894, 270 S.W.2d 923 (1954). In fact, in the case that started all of this confusion, *St. Paul Fire & Marine Ins. v. Wood,* the court said: "Thus, there is but one cause of action." *St. Paul Fire & Marine Ins. v. Wood,* 242 Ark. 879, 889, 416 S.W.2d 322 (1967).

So, if plaintiffs' argument is adopted, they will have settled and been paid for not only their claim but also that of Liberty Mutual and they will not be required to give Liberty Mutual its part of the settlement. They attempt to support this illogical result by contending that Arkansas law requires that an insurance carrier or employer perfect its lien upon the "debt" given by § 40 of the Arkansas Worker's Compensation Act or lose that debt. In effect, they contend that an insurance carrier or employer cannot acquire or have that "debt" imposed by § 40 of the Arkansas Worker's Compensation Act unless that employer or carrier perfects or secures that debt with a lien in the manner authorized by Ark.Code Ann. § 11–9–410(a)(1) (1987). That subsection of the statute simply does not say that and no Arkansas Supreme Court decision has either.

All that subsection (a)(1) says is that if an employer or carrier desires to secure the right to recovery given by subsequent subsections by the imposition of a lien on such recovery, it shall intervene in the cause of action in which the recovery is made. Subsequent subsections create the "debt," not subsection (a)(1). All that that subsection does is allow one who has a right to make such recovery secure that recovery by tying it to the amount recovered by a "band, tie or bond" provided by a lien.

As evidence that that is all that subsection (a)(1) was intended to do, it should be noted that a mere reading of that provision of law makes it clear that it was not intended to create the "debt." That subsection says that, if the employer or carrier joins in the action "they shall be entitled to a first lien upon two-thirds (⅔) of the net proceeds recovered in the action...." Ark.Code Ann. § 11–9–410(a)(1) (1987). Of course, if one reads further it becomes obvious that the statute does not really give the employer or carrier two-thirds of the total net proceeds recovered. Instead, it only gives them what they have paid but under no circumstances shall they receive more than two-thirds of the net recovery irrespective of whether that fully reimburses them or not.

If, as plaintiffs seem to argue, subsection (a)(1) truly creates the right in the employer and carrier, in some cases it would give them more than they have paid and more than they are entitled to. If, in fact, that subsection not only allows for the acquisition of a lien to secure the "debt" imposed by the statute but, also creates that debt, there are cases where the employer and carrier would receive more than it is entitled to. For example, assume that the total amount of the net recovery was one million dollars. A literal reading of subsection (a)(1) as plaintiffs would read it would give the employer and carrier a lien on and presumably a right to recover $666,666.66 even if much less than that had been paid in worker's compensation benefits. Obviously, that is not what is intended. Subsection (a)(1) does not grant the employer and carrier any right of recovery but, instead, only provides a means for securing the right given by other sections of the statute.

As is fully discussed in our opinion in *Suitt, supra,* in *Wood, supra,* the Arkansas Supreme Court allowed the cause of action jointly belonging to the employee and the employer to be split and approved the employee "settling around" the employer and insurance carrier by employing an exceptionally technical definition of the word "recovery" used in § 40. However, in doing so, the court recognized that where a compromise settlement extinguished the rights of the compensation carrier "it was tantamount to recovery." *Wood,* 242 Ark. at 888, 416 S.W.2d 322, citing *Maxcy v. John F. Beasley Const. Co.,* 228 Ark. 253, 306 S.W.2d 849 (1957).

In our case, it is undisputed that § 40 as interpreted by the Arkansas Supreme Court creates one cause of action, but two separate claims, one belonging to the employee and the other belonging to the employer or insurance carrier for the employer. Although the employee may "settle around" the insurance carrier by splitting off and putatively settling only his cause of action, he may not settle and get paid for both of the claims without

expecting to reimburse the carrier for the portion of the settlement belonging to it. Any contention to the contrary simply does not make sense.

It also does not make sense that the lien provision of § 40 as contained in subparagraph (a)(1) gives the employer or its carrier anything other than the right to perfect a security interest in the "debt" given by other subsections. It, thus, naturally follows that a failure to perfect the lien does nothing more than that and does not defeat the carrier's right to receive the portion of the settlement which was paid by the third party tortfeasor for its claim. That is what the checks in dispute were intended for, and that is what they are.

This court is not unaware of a decision of a panel of the Arkansas Court of Appeals, an Arkansas intermediate court, in *Jackson Cookie Co. v. Fausett*, 17 Ark.App. 76, 703 S.W.2d 468 (1986). In that case, an employee was injured in an accident in Georgia. The compensation carrier and the insured employer knew that a lawsuit had been filed against the third party tortfeasor in Georgia but they did not intervene in that lawsuit. The Georgia action was settled in April of 1983, but the compensation carrier and employer did not learn of the settlement until November of 1983. For whatever reason, even though learning of the settlement, they did not seek relief until June 11, 1984, when they asked a worker's compensation commission administrative law judge that they be allowed to take credit for their portion of the settlement and to reduce or terminate worker's compensation payments still being made until full recovery was made. On appeal to the full commission, the denial of such request by the administrative law judge was affirmed.

In affirming the Arkansas Worker's Compensation Commission Judge Corbin, writing for the panel, quoted the following passage from the opinion of the full Commission:

> While we cannot say that affirmance of the Law Judge is the outcome we wish to obtain, we feel that in the face of all the evidence and especially in view of the length of time the respondents had to intervene in the Georgia action, this Commission *under these specific circumstances* is compelled to affirm the Law Judge.

*Jackson Cookie,* 17 Ark.App. at 79, 703 S.W.2d 468 (emphasis in original).

The court held that since the compensation carrier knew of the Georgia action and did not intervene, it had lost its lien securing its right to reimbursement for the benefits paid. While there is language in the opinion that might support a contrary conclusion this court believes that the Court of Appeals did not hold that an employee or carrier loses the right to reimbursement if the lien is not perfected. Instead, the court believes that it is clear that this panel of the Arkansas Court of Appeals simply did not believe that it was "fair" to terminate worker's compensation benefits due to the employee in order to allow the insurance carrier to recoup payments that it could have and should have recouped by properly perfecting its lien in the Georgia action. It is clear from the opinion of the court that it intended to apply the holding in that case only to the facts of that case. It simply held that the insurance carrier, by failing to perfect its lien, had lost its right to recover from the settlement corpus the amount that it would have otherwise been entitled to. The court did not hold that, by failing to perfect the lien, it did not have a right to its portion of those proceeds but, instead, only that it would not allow the carrier to terminate the benefits to recoup what it should have recouped from the settlement corpus if it had properly protected itself.

Even if the *Fausett* case is construed to hold that an employer or compensation carrier loses the rights granted by § 40 of the Arkansas Worker's Compensation Act to be reimbursed for worker's compensation benefits paid simply because the employer or carrier failed to perfect, as permitted by law, the lien to secure such "debt," the court does not believe that the Arkansas Supreme Court would so hold. As already indicated, the court simply does not believe that the Court of Appeals intended to say that one cannot have a "debt" without perfecting a "lien" but even if it did, the court does not believe that the Arkansas Supreme Court would say that in view of its pronouncements in respect to the separate claims or rights owned by employees and employers as discussed above. Simply put, it does not make any sense, and

**1354**

the court does not believe that the Court of Appeals meant that nor that the Supreme Court would agree even if it did.

Of course, the law in respect to whether a federal district court in a diversity case is relegated to, in the words of Judge Jerome M. Frank, "play the role of ventriloquist's dummy to the courts of some particular state,"[2] has undergone considerable development since a series of United States Supreme Court decisions in the early 1940's. The law appears to be, as expressed in 19 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure*, § 4507 at p. 88 (1982):

> Thus, it now appears clear that a federal judge no longer need be a 'ventriloquist's dummy.' In applying state law in diversity cases, each federal court—whether district court or appellate court—functions as a proxy for the entire state court system, and therefore must apply the law that it conscientiously believes would have been applied in the state court system, which includes the state appellate tribunals. In other words, the federal court must determine issues of state law as it believes the highest court of the state would determine them, not necessarily (although usually this will be the case) as they have been decided by other state courts in the past.

*Id.* (footnotes omitted).

Thus, this court understand that it is its duty in diversity cases such as this one to determine from all the data available what the highest court of the state has said in respect to any issue, or absent some specific pronouncement, what it is likely to say. In doing that, this court simply does not believe, based upon other decisions of the Arkansas Supreme Court discussed above, and the rather clear and unambiguous language of § 40 of the Arkansas Worker's Compensation Act, that the Arkansas Supreme Court has held or will likely hold that a worker's compensation carrier or the employer loses or waives its right to recover worker's compensation benefits granted by that provision of law simply because it fails to or chooses not to secure that recovery by doing those things necessary to acquire a lien on the proceeds developed in a third party tort liability settlement. Similarly, the court does not believe that the Court of Appeals has so held or is likely to.

If that is the law, how could the employer or carrier protect themselves where no lawsuit is filed? Under those circumstances, what if the employee settles the entire claim—both his and the employers? If the employer only acquires a right to reimbursement by intervening in a lawsuit, how is it to protect itself where no lawsuit is filed? Why should the situation in this case where the employee files suit and then settles the claim be any different than one where settlement is made before any suit is filed? Must the employer in order to protect itself file suit even if the employee wants to settle without suit?

Again, in this case the employees did not "settle around" the carrier—they settled and were paid for the "whole ball of wax." Liberty Mutual is entitled to receive the amount paid for the portion of the "ball of wax" belonging to it.

In summary, the applicable provisions of § 40 discussed above grant to the worker's compensation carrier, Liberty Mutual in this case, a right to recover any amount paid by a third party tortfeasor for its portion of the cause of action granted by Arkansas law. That recovery is embodied in the two checks which are in dispute in this case, so it follows that those checks belong to Liberty Mutual Insurance Company, and the court holds that the plaintiffs and their attorney should be required, and they hereby are required, to deliver those checks, properly endorsed by them, to Liberty Mutual for negotiation.

A separate order accomplishing this will be concurrently entered.

**2.** *Richardson v. Commissioner*, 126 F.2d 562, 567 (2d Cir.1942).